## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| (1) JENNIFER GOODE, individually, and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
|  | ) CASE NO. 17-CV-472-GKF-MJX |
| v. | ) |
|  | ) ATTORNEY LIEN CLAIMED |
| (1) NUANCE COMMUNICATIONS, INC., | ) JURY TRIAL DEMANDED |
|  | ) |
| (2) NUANCE TRANSCRIPTION SERVICES, INC., | ) ) |
|  | ) |
| (3) TRANSCEND SERVICES, dba NUANCE TRANSCRIPTION SERVICES, INC., and | ) ) |
|  | ) |
| (4) TRANSOLUTIONS, INC., | ) ) |
| Defendants. | ) ) ) |

## COMPLAINT

COMES NOW Plaintiff, Jennifer Goode, and the employees she seeks to represent ("Putative Class Members"), by and through her counsel of record, and for her Complaint against the above-listed Defendants, state as follows:

### A.      INTRODUCTORY STATEMENT

1.  Defendants improperly reduced Plaintiff's and Putative Class Members' compensation as follows: failure to pay mandated rest periods less than 20 minutes in length, failure to pay promised incentives, improper reduction of Plaintiff's and Putative Class Members' respective rates of pay, and failure to pay overtime and minimum wage rates of pay.

2.  Consequently, Defendants' compensation scheme constitutes breach of contract, fraud,

violation of the Fair Labor Standards Act and violation of the Oklahoma Protection of Labor Act.

3.   Plaintiff seeks to recover, on behalf of herself and the Putative Class Members, all unpaid wages and other damages allowed as a nationwide class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and as a nationwide collective action pursuant to 29 U.S.C. § 216(b) of the FLSA.

## B.    PARTIES

4.   Plaintiff and the employees she seeks to represent ("Putative Class Members") are current and/or former non-exempt medical transcriptionists employed by Transcend Services, dba Nuance Transcription Services, Inc., Transolutions, Inc., and Nuance Transcription Services, Inc., all of which are wholly owned subsidiaries of Nuance Communications, Inc. (collectively, "Defendants" or "Nuance").

5.   Plaintiff's consent to join this lawsuit as a collective action is filed herein. [Consent form attached as Exhibit A].

6.   Plaintiff is a resident of Claremore, Oklahoma, within the Northern District of Oklahoma. Furthermore, Plaintiff's unpaid wages result from work performed within this judicial district.

7.   Nuance Communications, Inc. is a Delaware corporation with its headquarters located in Burlington, Massachusetts.

## C.    JURISDICTION AND VENUE

8.   Plaintiff and Putative Class Members incorporate the preceding paragraphs herein by reference.

9.   Jurisdiction over Plaintiff's FLSA claim is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

10. This Court has subject matter jurisdiction in accordance with 28 U.S.C. §1337 and over

the federal law claim pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq.*

11. This Court also has supplemental jurisdiction over Plaintiff's claims for breach of contract, violation of the Oklahoma Protection of Labor Act and fraud pursuant to 28 U.S.C. § 1367 because those claims are so related to the FLSA claims that they form part of the same case or controversy under Article III of the United States Constitution.

12. Venue is properly laid in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and by 29 U.S.C. § 216(b), because Defendants reside in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

### D.  FLSA COVERAGE

13. Plaintiff and Putative Class Members incorporate the preceding paragraphs herein by reference.

14. As described *infra*, at all material times, Defendants have been employers within the meaning of the FLSA. *See* 29 U.S.C. § 203(d).

15. As described *infra*, at all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA. *See* 29 U.S.C. § 203(s)(1).  Defendants have had and continue to have employees engaged in commerce. *See Id.*

16. Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard of $500,000.

17. As described *infra*, at all material times, Plaintiff and Putative Class Members were employees who engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

18. As described *infra*, Defendants had an interrelation of operations between the companies,

centralized control of labor relations, common control, and a common business purpose, including without limitation, by directly or indirectly controlling the terms of employment of Plaintiff and Putative Class Members.

19. Defendants either directly or indirectly controlled the hours worked by Plaintiff and Putative Class Members.

20. Defendants either directly or indirectly provided training to Plaintiff and Putative Class Members.

21. Defendants directed the work of Plaintiff and Putative Class Members.

22. Defendants both directly or indirectly maintained communication with Plaintiff and Putative Class Members and received updates as to the status of their work.

23. Defendants provided guidance on how each assigned task was to be performed by Plaintiff and Putative Class Members.

24. Defendants had a common business purpose to perform transcription services.

25. Defendants' operations were unified and Defendants either directly or indirectly shared control over the work of the Plaintiff and Putative Class Members.

26. Thus, Defendants are each directly liable for the violations in this case.

## E.  COLLECTIVE AND CLASS ALLEGATIONS

27. Plaintiff and Putative Class Members incorporate the preceding paragraphs herein by reference.

28. Nuance is the largest medical transcription organization in the world, and employs more than 12,000 medical transcriptionists ("MT's").[1]  Nuance's MT's transcribe over 5 billion lines of medical data annually.  On its website, Nuance boasts that 60% of healthcare facilities

---

[1] Nuance also refers to an MT as a medical language specialist ("MLS").

worldwide use its services to transcribe medical records.

29. Plaintiff began employment as an MT with Nuance in December 2011.  At all times relevant to this action, Plaintiff's primary duty has been the transcription of physician-generated audio recordings.  Plaintiff and Putative Class Members are considered "remote" employees, in that they typically work from home. Nuance pays Plaintiff and all other MT's based upon the number of lines of dictation that an MT transcribes in a given week. A "line" comprises 65 characters, including spaces, for purposes of Nuance's calculation.  The accuracy with which those lines are transcribed is also factored into the wage calculation. Nuance utilizes the following "Pay Grid" to determine the decimal amount per line transcribed that an MT earns in a given week:

## PAY GRID

| QA% Start | QA% End | Tier1 | Tier2 | Tier3 | Tier4 | Tier5 | Tier6 | Tier7 | Tier8 | Tier9 | Tier |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 99.9% | 100.0% | 0.0800 | 0.1050 | 0.1060 | 0.1070 | 0.1100 | 0.1130 | 0.1160 | 0.1190 | 0.1230 | 0.12 |
| 99.8% | 99.9% | 0.0800 | 0.1031 | 0.1040 | 0.1048 | 0.1097 | 0.1120 | 0.1150 | 0.1180 | 0.1200 | 0.12 |
| 99.7% | 99.8% | 0.0800 | 0.1011 | 0.1019 | 0.1027 | 0.1077 | 0.1110 | 0.1140 | 0.1165 | 0.1180 | 0.12 |
| 99.6% | 99.7% | 0.0800 | 0.0969 | 0.0978 | 0.0986 | 0.1040 | 0.1080 | 0.1130 | 0.1140 | 0.1160 | 0.11 |
| 99.5% | 99.6% | 0.0800 | 0.0949 | 0.0957 | 0.0965 | 0.1030 | 0.1070 | 0.1100 | 0.1130 | 0.1140 | 0.11 |
| 99.4% | 99.5% | 0.0800 | 0.0928 | 0.0936 | 0.0945 | 0.1020 | 0.1060 | 0.1080 | 0.1120 | 0.1125 | 0.11 |
| 99.3% | 99.4% | 0.0800 | 0.0908 | 0.0916 | 0.0924 | 0.0980 | 0.1000 | 0.1050 | 0.1080 | 0.1100 | 0.11 |
| 99.2% | 99.3% | 0.0800 | 0.0887 | 0.0895 | 0.0903 | 0.0940 | 0.0970 | 0.1000 | 0.1030 | 0.1060 | 0.106 |
| 99.1% | 99.2% | 0.0800 | 0.0866 | 0.0875 | 0.0883 | 0.0900 | 0.0930 | 0.0950 | 0.1000 | 0.1045 | 0.106 |
| 99.0% | 99.1% | 0.0800 | 0.0825 | 0.0833 | 0.0842 | 0.0870 | 0.0890 | 0.0920 | 0.0950 | 0.0975 | 0.102 |
| 0.0% | 99.0% | 0.0750 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.080 |
| LineCount | | < 100 | < 110 | < 120 | < 130 | < 150 | < 170 | < 190 | < 215 | < 240 | < 29 |
| QC > 5% | | 0.0700 | 0.0700 | 0.0700 | 0.0700 | 0.0700 | 0.0700 | 0.0700 | 0.0700 | 0.0700 | 0.070 |

30. Nuance also mandates that MT's take paid rest periods in an aggregate amount of 30 minutes during any shift in which an MT works more than six hours.  According to a nationwide policy, MT's that work more than 3.5 hours in a day are required to take one 15-minute rest period (break) per each four hours worked, or major fraction thereof (more than two hours). The policy states that Nuance "counts time spent on rest periods as hours worked."  Nuance

further warns that discipline, up to and including termination, can result from "[f]ailing to observe working schedules, including rest and break periods."

31. Despite Nuance's requirement that MT's take rest periods, and despite the employer's promise to pay MT's for such time, a review of the following representative paystub indicates that MT's not only go uncompensated for such rest periods, but are actually penalized for taking the abbreviated, mandatory breaks.



32. During week one, Plaintiff produced 4118.40 lines of transcription.   In week two, Plaintiff produced 4727.60 lines.   Plaintiff typically works four eight-hour shifts per week. Plaintiff's pay stub indicates that she worked 64.09 hours during the two-week period.[2] The hours worked by Plaintiff include her mandated rest periods.   Nuance paid Plaintiff at a rate of .1048 per line during week one, and .1100 per line for work performed during week two. Based upon review of the Pay Grid, Plaintiff was paid at Tier 4 for week one.   Tier 4 lists

---

[2] The biweekly paystub fails to document the hours worked per week, as required by state and federal law.  For purposes of these calculations, it is assumed that Plaintiff worked 30.045 hours per week.

decimal rates for MT's who average at least 120 lines but less than 130 lines in a week.

33. In order to compensate Plaintiff for the 30 minutes of mandated rest periods she took each day in the 4 day work week, it is necessary to first subtract that time from the hours worked in the week to calculate the lines produced per hour: 4118.40/30.045 = 137.07. Accordingly, Plaintiff should have been paid at a Tier 5 rate for her production time during week one (at least 130 lines but less than 150 lines), which is .1097 per line. At that rate, she should have been paid according to the following formula for lines produced during week one: 4118.40 x .1097 = $451.79. The following calculation is then used to calculate the appropriate hourly rate for purposes of determining the rest period rate: $451.79/30.045 production hours = $15.037 per hour.

34. Plaintiff should have been paid an additional $30.07 for the two hours of break time during week 1, which should have then been added to the $451.79 for lines produced during the week, for a total of $481.86. Instead, Nuance paid Plaintiff $431.36 for the week, a shortage of $50.50.

35. The week two calculation produces a similar result: 4727.60 lines produced, divided by 30.045 hours of production = 157.35 lines per hour. Accordingly, Plaintiff should have been paid at a Tier 6 rate (at least 150 lines but less than 170 lines), which is .1130 per line. At that rate, 4727.60 x .1130, plaintiff should have been paid $534.22 for lines produced in week two. The corresponding calculation to determine the paid rest period rate is $534.22/30.045=$17.78 per hour.

36. Plaintiff should have been paid $35.56 for the two hours of rest periods in week 2, combined with the $534.22 for lines produced during the week, for a total of $569.78. Instead, Nuance paid Plaintiff $520.04, a shortage of $49.74.

37. These calculations reveal that, as a matter of Defendants' business practice, Plaintiff and other similarly situated MT's are not paid for the mandated rest periods. Rather, they are *penalized* for taking them. Nuance artificially reduces the production rate of MT's by improperly including the mandated rest period time when calculating line production per hour. To compound the wage theft, Nuance then fails to pay **any amount** to its MT's for the required rest periods, as required by the agreement of the parties.

38. Similarly, Defendants failed to pay promised incentives to MT's. Defendants implemented the following nationwide policy that promised certain payments to Plaintiff and Putative Class Members for work performed through July 14, 2017:

### HR Update: Notice to US Employees of Nuance Transcription Services

By: ▓▓▓▓▓ | Friday, July 07, 2017

The Operations leadership and management teams continue to be incredibly grateful for the commitment, integrity and patience of our employees throughout this malware incident. You have certainly demonstrated the passion for patient care and patient safety that is essential to our Mission as Nuance Transcription Services!

We knew that the first week to 10 days of this incident would be critical to our recovery and so put into place incentives to ensure your commitment could be recognized financially and any losses you may suffer due to inability to access our technologies could be minimized. But we are on the road to recovery now and we will begin to revert to a more normal situation for compensation.

**Description of payroll calculation for week ending 7/7:**

Pay for the first 8 hours worked daily will be made at 1.5 X hours worked X AHR.

Pay for hours worked in excess of 8 hours daily will be made 2.0 X hours worked X AHR.

An additional $1000 bonus will be paid to employees who have at least 40 productive hours within five consecutive days as of July 8 at 11:59 PM EST. This date ends the bonus incentive period.

Technical downtime pay, as authorized by managers, will continue to be applied in the instance where technology still prevents production and employees cannot be assigned to production work or work is not available due to technology constraints.

**Description of payroll calculation for week ending 7/14:**

Production hours worked and reported by managers will be paid at 1.5 X hours worked X AHR.

Technical downtime pay, as authorized by managers, will continue to be applied in the instance where technology still prevents production and employees cannot be assigned to production work or work is not available due to technology constraints.

**Additional note:**

**Full use of Webclock can begin again on Saturday July 8.** You may log production hours, technical downtime and all other tasks types as you would normally. The NTS Payroll team will calculate the extra hours owed for the 1.5 X hours incentive.

39. Although numerous employees complained to Nuance regarding the non-payment of certain of these incentives, Defendants failed or refused to pay the promised compensation.

40. Plaintiff has actual knowledge that Putative Class Members have also been denied pay

for employer-mandated rest periods.  That is, Plaintiff worked with other employees of Defendants who were denied compensation for the mandated rest periods, in violation of the Nuance/MT agreement and the FLSA.

41. Other employees similarly situated to Plaintiff work or have worked for Defendants, but are/were not paid for rest periods, were paid an artificially reduced wage when Defendants penalized them for taking the breaks, and were denied promised incentive payments.

42. Although Defendants required the Putative Class Members to take a combined 30 minutes of paid rest periods per shift exceeding 6 hours, Defendants have denied them any compensation for those breaks.

43. Putative Class Members perform or have performed the same or similar work as Plaintiff.

44. Putative Class Members are not exempt from the provisions of the FLSA.

45. As such, Putative Class Members are similar to Plaintiff in terms of job duties, pay structure, and the denial of wages.

46. Defendants' failure to provide compensation for mandated rest periods and promised incentives, as required by the agreement of the parties and the FLSA, results from generally applicable policies or practices, and does not depend on the personal circumstances of each Putative Class Member.

47. The experiences of Plaintiff, with respect to pay, are typical of the experiences of the Putative Class Members.

48. The specific job titles or precise job responsibilities of each Putative Class Member does not prevent collective or class treatment.

49. All Putative Class Members, irrespective of their particular job requirements, are entitled to compensation for mandated rest periods and incentives pursuant to the agreement of the

parties. When the addition of the mandated rest periods to the other hours worked in a workweek results in over 40 hours worked, the FLSA requires that such time be paid at one and one-half times the regular hourly rate.   Similarly, during certain workweeks Plaintiff and Putative Class Members were paid minimum wage, excluding time spent on mandatory "paid" breaks.  During such workweeks, by excluding the mandatory break time from MT hours worked, Defendant failed to pay Plaintiff and Putative Class Members minimum wage as mandated by the FLSA.

50. Defendants utilized the same pay structure regardless of the location of employment of a particular Putative Class Member.

51. Although the exact amount of damages may vary among Putative Class Members, the damages for the Putative Class Members can be calculated by a formula.  The claims of all Putative Class Members arise from a common nucleus of facts.  Liability is based on a systematic course of wrongful conduct by the Defendants that caused harm to all Putative Class Members.

52. As such, there are three subclasses of similarly situated Rule 23 Putative Class Members, which are properly defined as follows:

   a.  All of Defendants' current and former MT's who worked at any time during the five (5) years before the filing of the original Complaint to the present who were not paid for at least one mandated rest period of less than 20 minutes;

   b.  All of Defendants' current and former MT's who worked at any time during the five (5) years before the filing of the original Complaint to the present who were paid an hourly wage that was artificially reduced by Defendants;

   c.  All of Defendants' current and former MT's who worked at any time during the five (5) years before the filing of the original Complaint to the present who were

not paid promised incentive compensation.

53. There are also two subclasses of FLSA Putative Class Members, which are properly defined as follows:

   a. All of Defendants' current and former MT's who worked at any time during the three (3) years before the filing of the original Complaint to the present who were not paid for at least one mandated rest period of less than 20 minutes, during a workweek that the MT, with the inclusion of unpaid breaks, worked more than 40 hours.

   b. All of Defendants' current and former MT's who worked at any time during the three (3) years before the filing of the original Complaint to the present who were not paid for at least one mandated rest period of less than 20 minutes, during a workweek that, with the inclusion of unpaid breaks as hours worked, the MT earned less than the FLSA's minimum wage rate.

54. Defendants are jointly and severally liable for the unlawful actions alleged herein of their owners, officers, managers, employees, agents, representatives, subsidiaries, predecessors, successors, and/or other persons and/or entities for whom they are legally responsible.

55. Plaintiff's and Putative Class Members' claims satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action.

56. The Class satisfies the numerosity standards. The class is believed to comprise several thousand employees. As a result, joinder of all members is impracticable.

57. There are questions of law or fact common to the Class that predominate over any questions affecting only individual members. The questions of law and fact common to the class arising from Defendants' actions include, without limitation, the following:

a.  Whether Defendants failed to compensate MT's for time spent on mandatory rest periods of less than 20 minutes;

b.  Whether Defendant artificially reduced MT's line production rate per hour by including break time, thereby reducing the decimal amount that transcriptionists are paid per line transcribed;

c.  Whether Defendants failed to keep accurate records of the actual time MT's spent performing compensable activities;

d.  Whether Defendants failed to pay promised incentives;

e.  Whether Defendants' compensation policies and practices are illegal;

f.  If Defendants violated the FLSA, whether such violations were willful.

g.  Whether Defendants' actions constitute fraud.

58. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the state law claims.

59. Plaintiff's claims are typical of those of the Class in that Putative Class Members have been employed by Defendants as non-exempt hourly workers, were subject to the same or similar uncompensated rest periods, were paid based upon an artificially reduced hourly rate, and were not paid for promised incentives.  Plaintiff and Putative Class Members were all subject to Defendants' nationwide policies in regard to payment of wages and the methods by which Defendants calculated wage payments.

60. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted and/or refused to act on grounds generally applicable to the

class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of class members to protect their interests.

61. Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the members of the class she seeks to represent. Plaintiff, and her undersigned counsel, who have experience prosecuting complex wage and hour, employment, and/or other complex civil litigation, will fairly and adequately protect the interests of the members of the class.

62. Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy. It would be impracticable and undesirable for each member of the class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

## F.  CAUSES OF ACTION

### COUNT I: FAIR LABOR STANDARDS ACT— FAILURE TO PROVIDE COMPENSATION FOR MANDATED REST PERIODS

63. Plaintiff and Putative Class Members incorporate the preceding paragraphs herein by reference.

64. Defendants are engaged in commerce and are employers covered by and subject to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

65. Plaintiff and Putative Class Members are subject to the provisions of the FLSA.

66. Defendants failed to pay Plaintiff and Putative Class Members for mandatory break

periods less than 20 minutes in length.

67. When Plaintiff and Putative Class Members took such breaks, they were entitled to receive compensation. At times when Plaintiff and Putative Class Members worked more than 40 hours in a workweek, they were entitled to receive one and one-half times their respective hourly rate for all hours worked over 40 in a workweek. Therefore, Plaintiff and Putative Class Members who worked more than 40 hours in a workweek, including the mandatory paid breaks, did not receive the required compensation under the FLSA.

68. Similarly, during weeks when Plaintiff and Putative Class Members received make-up pay to meet the minimum wage provisions of the FLSA, by excluding the mandatory break time from MT hours worked, Defendant failed to pay Plaintiff and Putative Class Members minimum wage as mandated by the FLSA.

69. Defendants' failure to compensate Plaintiff and Putative Class Members for the mandated breaks was willful and not based on a good faith and reasonable belief that its conduct complied with the FLSA.

70. As such, Defendants' failure to pay Plaintiff and Putative Class Members violated the provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.,* and renders Defendants jointly and severally liable to Plaintiff and Putative Class Members, for unpaid wages, liquidated damages, interest, expenses, attorneys' fees, and costs.

### COUNT II: OKLAHOMA PROTECTION OF LABOR ACT—FAILURE TO PAY UNPAID WAGES IN VIOLATION OF 40 O.S. § 161, *et seq.*
(Plaintiff and All Oklahoma Class Members)

71. Plaintiff and Putative Class Members incorporate the preceding paragraphs herein by reference.

72. Defendants are employers covered by and subject to the Oklahoma Protection of Labor

Act, 40 O.S. § 161, *et seq.*

73. Defendants had a statutory duty under Oklahoma law to compensate Plaintiff and Oklahoma Class Members their regular hourly wage for all hours Plaintiff and Putative Class Members worked, including the mandated, paid rest periods. Defendants also had a statutory duty to pay Plaintiff for promised incentives that were part of an established, company-wide policy.

74. Defendants' failure to compensate Plaintiff and Oklahoma Class Members for the mandated, paid rest periods or for promised incentives is in direct violation of Oklahoma wage law. Plaintiff and Putative Class Members who performed work for Defendants in Oklahoma are entitled to such payments for the incentives and rest periods, in accordance with the Oklahoma Protection of Labor Act.

75. Defendants' failure to pay all wages due to Plaintiff and Oklahoma Class Members was willful. More specifically, Defendant's wrongful acts violate 40 O.S. § 165.3 (B).[3]

76. Defendants' willful failure to pay all wages due to Plaintiff and Oklahoma Class Members, in violation of 40 O.S. § 165.3, permits Plaintiff and Oklahoma Class Members, to recover liquidated damages in addition to their unpaid wages, penalties, interest, expenses, reasonable attorneys' fees and costs.

## COUNT III: BREACH OF CONTRACT

77. Plaintiff and Putative Class Members incorporate the preceding paragraphs herein by

---

[3] B. "If an employer fails to pay an employee wages as required under subsection A of this section, such employer shall be additionally liable to the employee for liquidated damages in the amount of two percent (2%) of the unpaid wages for each day upon which such failure shall continue after the day the wages were earned and due if the employer willfully withheld wages over which there was no bona fide disagreement; or in an amount equal to the unpaid wages, whichever is smaller...."

reference.

78. Defendants entered into employment agreements with Plaintiff and Putative Class Members, through which Defendants agreed to pay Plaintiff and Putative Class Members for mandated rest periods, and to pay promised incentives.

79. The employment agreement was supported by consideration.

80. Plaintiff and Putative Class Members performed work for Defendants in compliance with the agreement.

81. Defendants breached the agreement by not compensating Plaintiff and Putative Class Members for the rest periods or for promised incentives.

82. Plaintiff and Putative Class Members enjoyed a contractual right to receive payment for these breaks.

83. Plaintiff and Putative Class Members had an expectation to receive the promised compensation.

84. Defendants' breaches caused damages to Plaintiff and Putative Class Members.

85. Defendants' breach of contract renders Defendants liable to Plaintiff and Putative Class Members.

## COUNT IV: FRAUD

86. Plaintiff and Putative Class Members incorporate the preceding paragraphs herein by reference.

87. Defendants falsely represented that Plaintiff and Putative Class Members would be paid for mandatory breaks. Defendants knew that this assertion was false, or made such assertion recklessly without knowledge of the truth, with the intention that Plaintiff and Putative Class Members would act upon such assertion by taking the breaks.    Plaintiff and Putative Class

Members relied to their detriment on the false assertion by taking the breaks. Consequently, Nuance not only failed to pay Plaintiff and Putative Class Members for the breaks, but also deducted compensation by artificially reducing hourly line counts through the inclusion of unpaid break time as time worked.

88. Defendants' misrepresentations render them liable to Plaintiffs and Putative Class members.

## PRAYER FOR RELIEF

89. Plaintiff and Putative Class Members request relief and pray for judgment against Defendants, jointly and severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), for the following:

A. Unpaid wages;

B. Liquidated damages in an amount equal to the unpaid wages;

C. Statutory penalties;

D. Economic damages;

E. Compensatory damages;

F. Punitive damages;

G. All costs, expenses, and attorneys' fees;

H. Pre-judgment interest, calculated at the maximum rate allowed by law;

I. Post-judgment interest at the legal rate from the date of the judgment until paid in full; and

J. Such other and further relief as the Court may deem just and appropriate.

Plaintiff and Putative Class Members reserve the right to amend their demand for judgment as new information is discovered during the course of this case.

Respectfully submitted,
**SMOLEN, SMOLEN & ROYTMAN, PLLC.**

By:    \s\ David A. Warta
       Daniel E. Smolen, OBA #19943
       Donald E. Smolen, II, OBA #19944
       David A. Warta, OBA #20361
       701 S. Cincinnati Ave.
       Tulsa, OK 74119
       (918) 585-2667
       Fax (918) 585-2669
       *Attorneys for Plaintiffs*