IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JENNIFER GOODE**, and<br><br>**KANDI FREY**, individually, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>**NUANCE COMMUNICATIONS, INC.** and<br><br>**NUANCE TRANSCRIPTION SERVICES, INC.**<br><br>    Defendants. | Case No. 17-cv-472-GKF-JFJ |

## DEFENDANTS' MOTION TO DISMISS, IN PART, THE SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 2

ARGUMENT ................................................................................................................ 4

I.      Standard of Review for a Motion to Dismiss .................................................... 4

II.     Plaintiffs' Massachusetts Wage Claims (Count II) Must Be Dismissed Because,
        As Non-Residents Who Never Worked for Defendants in Massachusetts,
        Plaintiffs Do Not Have Standing and Are Not Entitled to Claim Protection Under
        These Laws. ........................................................................................................ 5

III.    Plaintiffs' Fraud Claim (Count IV) Must Be Dismissed Because It Fails to Satisfy
        Rule 9(b)'s Heightened Pleading Standard and, Alternatively, Is Not Viable
        Under Oklahoma or Massachusetts Law. ....................................................... 10

        A.      Plaintiffs Fail to Allege Facts with Sufficient Particularity to State a Fraud
                Claim. ................................................................................................... 10

        B.      Plaintiffs' Fraud Claim Also Fails as a Matter of Law Because It Is Not
                Viable Under Oklahoma or Massachusetts Law. .................................. 14

                1.      Under Oklahoma Law, Plaintiffs' Fraud Claim is a Breach of
                        Contract Claim in Disguise. ..................................................... 15

                2.      Under Oklahoma Law, Plaintiffs' Fraud Claim is Duplicative of
                        Their Breach of Contract Claim ............................................... 16

                3.      Plaintiffs' Fraud Claim is Not Viable Under Massachusetts Law ........... 18

CONCLUSION ............................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*AECOM Tech Servs., Inc. v. Mallinckrodt LLC,*
   117 F. Supp. 3d 98 (D. Mass. 2015) ................................................................19, 20

*Anderson v. Fox Hill Vill. Homeowners Corp.,*
   676 N.E.2d 821 (Mass. 1997) .........................................................................19, 20

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................................ 1, 4

*Atkinson, Haskins, Nellis, Brittingham, Gladd & Fiasco, P.C. v. Oceanus Ins. Group,*
   2014 WL 3891267 (N.D. Okla. Aug. 7, 2014) (Dowdell, J.) ................................... 15, 16, 17, 18

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................................ 1, 4

*Coons v. Oklahoma,*
   2011 WL 4403727 (N.D. Okla. Sept. 21, 2011) (Frizzell, J.) ................................... 4

*Courtright v. Bd. of Cty. Commr's. of Payne Cty., Oklahoma,*
   2008 WL 2446138 (W.D. Okla. June 13, 2008) ....................................................... 5

*Cumis Ins. Soc'y v. BJ's Wholesale Club, Inc.,*
   918 N.E.2d 36 (Mass. 2009) .............................................................................. 19

*Dow v. Casale,*
   989 N.E.2d 909 (Mass. App. Ct. 2013) ............................................................... 6, 9

*Fox v. Overton,*
   534 P.2d 679 (Okla. 1975) ................................................................................15

*Go-Best Assets Ltd. v. Citizens Bank of Massachusetts,*
   972 N.E.2d 426 (Mass. 2012) ........................................................................... 19

*Horton v. Bank of America, N.A.,*
   189 F. Supp. 3d 1286 (N.D. Okla. May 18, 2016) (Frizzell, J.)................................15, 16, 18

*Hunnicutt v. Zeneca, Inc.,*
   2012 WL 4321392 (N.D. Okla. Sept. 19, 2012) (Kern, J.) .................................... 8, 9

*Kansas Penn Gaming, LLC v. Collins,*
   656 F.3d 1210 (10th Cir. 2011)............................................................................ 5

*Koch v. Koch Indus., Inc.*,
    203 F.3d 1202 (10th Cir. 2000) ..........................................................................................11, 13

*Lee v. Enter. Fin. Grp.*,
    2009 WL 1362605 (W.D. Okla. May 14, 2009) ................................................................ 12, 13

*Lexington Ins. Co. v. Newbern Fabricating, Inc.*,
    2015 WL 3911305 (N.D. Okla. June 25, 2015) (Eagan, J.) ...................................................... 14

*Lillard v. Stockton*,
    267 F. Supp.2d 1081 (N.D. Okla. 2003) (Payne, J.) ................................................................11

*Litz v. Saint Consulting Group, Inc.*,
    2012 WL 549057 (D. Mass. Feb. 17, 2012) .......................................................................... 6, 7

*Lolar v. Oklahoma*,
    2017 WL 1205069 (N.D. Okla. Mar. 30, 2017) (Frizzell, J.) ............................................... 4, 5

*McGregor v. Nat'l. Steak Processors, Inc.*,
    2012 WL 314059 (N.D. Okla. Feb. 1, 2012) (Eagan, J.) ......................................... 15, 16, 17, 18

*Moody v. Ford Motor Co.*,
    2006 WL 346433 (N.D. Okla. Feb. 13, 2006) (Eagan, J.).......................................................15

*Myklatun v. Flotek Industries, Inc.*,
    734 F.3d 1230 (10th Cir. 2013) ..............................................................................................15

*Nekoroski v. Mathai*,
    2012 WL 5309524 (Mass. Super. Ct. Sept. 28, 2012) ............................................................. 8

*Price v. Pub. Serv. Co. of Oklahoma*,
    2014 WL 1217962 (N.D. Okla. Mar. 24, 2014) (Frizzell, J.) .................................................... 4

*Robbins v. Oklahoma*,
    519 F.3d 1242 (10th Cir. 2008) ........................................................................................... 4, 5

*Spencer v. Vatterott Educ. Ctrs.*,
    2013 WL 1308750 (E.D. Okla. Mar. 28, 2013) .................................................................. 12, 13

*Stinson v. Mayard*,
    2008 WL 4525399 (W.D. Okla. Sept. 30, 2008) .....................................................................11

*Toone v. Wells Fargo Bank, N.A.*,
    716 F.3d 516 (10th Cir. 2013) ...............................................................................................11

*VanZandt v. Okla. Dept. of Human Servs.*,
    276 F. App'x. 843 (10th Cir. 2008) ......................................................................................5, 14

iii

*Wade v. EMCASCO Ins. Co.*,
    483 F.3d 657 (10th Cir. 2007) ................................................................17

*Whitehead v. Ocwen Fin. Corp.*,
    2017 WL 489418 (N.D. Okla. Feb. 6, 2017) (Frizzell, J.) .............................11, 12, 14

*Wright v. Serrano*,
    2013 WL 183722 (N.D. Okla. Jan. 17, 2013) (Eagan, J.) ......................................... 12

## Statutes

MASS. GEN. LAWS ch. 149, § 148 ............................................................................1, 6

MASS. GEN. LAWS ch. 151, § 1A ............................................................................1, 6

## Other Authorities

FED. R. CIV. P. 9(b) ....................................................................................................11

FED. R. CIV. P. 12(b)(6) ............................................................................................ 1

WEIL:\96416411\14\51991.0081

## PRELIMINARY STATEMENT

Plaintiffs' Second Amended Complaint ("SAC") represents Plaintiffs' <u>third</u> attempt to plead viable claims against Defendants Nuance Communications, Inc. and Nuance Transcription Services, Inc. (collectively, the "Defendants").[1] Notwithstanding Plaintiffs' two prior pleading attempts, as well as Defendants' motion to dismiss the First Amended Complaint ("FAC"), which put Plaintiffs on notice of various deficiencies in their prior pleading, Plaintiffs continue to fling vague, conclusory, and erroneous allegations regarding Defendants' rest break policies and practices, and specifically the impact those policies and practices purportedly had on Plaintiffs' straight time and overtime wages.  They take a similar approach with respect to their allegations concerning Nuance's July 2017 incentive compensation program.

The SAC continues to present a grab bag of opaque and conclusory claims and allegations, many of which cannot survive the pleading standards set forth by the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), or those delineated by courts in the Tenth Circuit.  Plaintiffs pursue putative collective and class claims, all revolving around rest breaks and incentive compensation, under the Fair Labor Standards Act ("FLSA") (Count I), Chapter 149, Section 148 of the Massachusetts General Law ("Payment of Wages Statute," part of the "Wage Act"), M.G.L. Chapter 151, Section 1A ("Overtime Law") (Count II), and common law claims for breach of contract (Count III) and fraud (Count IV).  Counts II and IV of the SAC do not adequately plead claims for relief and must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]

In the SAC, having dropped Plaintiff Goode's Oklahoma Protection of Labor Act claim in response to Defendants' motion to dismiss the FAC, Plaintiffs now veer even further off course

---

[1] Although Plaintiffs' SAC currently also names Transcend Services, dba Nuance Transcription Services, Inc. and Transolutions Inc. as Defendants, the Court terminated these parties during the January 12, 2018 scheduling conference. (Dkt. No. 40.)

[2] Counts I (the FLSA claim) and III (breach of contract) are not the subject of this motion, but Defendants vigorously dispute the merits of those claims.

in asserting claims under *Massachusetts* law and in amending their fraud claim.  However, nowhere in their SAC have Plaintiffs alleged that either of the named Plaintiffs ever resided in Massachusetts during their employment with Nuance, ever performed any work or services for Defendants in Massachusetts, ever executed any offer letters, employment agreements, or policies or handbooks related to rest breaks or incentive compensation in Massachusetts, ever attended any trainings or meetings regarding rest-break or incentive compensation policies in Massachusetts, or were ever impacted by the challenged policies in Massachusetts.  Thus, Plaintiffs have failed to plead facts sufficient to show that *Massachusetts* has any meaningful relationship—let alone the most significant relationship—to Plaintiffs' rest break and incentive compensation claims.  Plaintiffs' fraud claim also continues to suffer from the same fatal infirmity that it did in the FAC, falling far short of meeting the heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure and this Circuit's (including this Court's) jurisprudence.  In that regard, Plaintiffs fail to sufficiently plead the particulars of any alleged fraudulent act, and specifically the "who," "what," "when," "where," and "how" of any alleged fraud. Instead, Plaintiffs attempt to stitch together a few vague allegations, but fail to specifically attribute any of those sparse threads to any particular Defendant.  Remarkably, in amending their allegations, Plaintiffs have further weakened their fraud claim by now failing to describe *any* specific damages resulting from the alleged fraud.  Even if Plaintiffs could meet the heightened pleading standard of Rule 9(b) (which they cannot), Plaintiffs' fraud claim still must be dismissed with prejudice because, regardless of which law the Court applies, it is well settled under both Oklahoma and Massachusetts law that a plaintiff may not pursue a fraud claim that is masquerading as a breach of contract claim.

## FACTUAL BACKGROUND

Nuance provides medical transcription services to healthcare facilities around the world. (Second Am. Compl., ¶ 32.) Plaintiff Jennifer Goode is an Oklahoma resident and current medical language specialist ("MLS") of Nuance, and Plaintiff Kandi Frey is an Idaho resident

WEIL:\96416411\14\51991.0081

and former MLS of Nuance. (*Id.*, ¶¶ 5, 8.)[3] Significantly, Plaintiffs have not pleaded that either of them ever resided in Massachusetts, performed an iota of work for Nuance in Massachusetts, signed any agreements or executed any policies in Massachusetts, attended any trainings or meetings regarding any policies in Massachusetts, or received any earnings from Nuance that were issued out of or sent to Massachusetts. The crux of the SAC appears to revolve around Plaintiffs' erroneous allegations that Nuance's mandatory paid rest break policy resulted in the MLSs' failure to receive proper minimum wage and overtime, and separately that Nuance's July 2017 incentive compensation policy denied MLSs proper wages. (*Id.*, ¶ 1.) Plaintiffs seek damages on behalf of themselves, as well as on behalf of current and former MLSs, during the relevant time periods as part of a proposed Massachusetts state-law class pursuant to Rule 23 of the Federal Rules of Civil Procedure, and a proposed nationwide collective pursuant to 29 U.S.C. § 216(b) of the FLSA. (*Id.*, ¶ 3.)

According to the SAC, Plaintiffs work from home (in Oklahoma and Idaho), and their primary duty is to transcribe physician-generated audio recordings. (*Id.*, ¶ 33.) They are paid on both a production and quality basis, meaning that their compensation depends on the number of lines of dictation they transcribe in a given week, as well as the accuracy of these transcriptions. (*Id.*, ¶ 34.) As Plaintiffs allege in the SAC, Nuance's rest break policy provides that MLSs who work more than 3.5 hours in a day must take one 15-minute rest break for every 4 hours worked, or major fraction thereof, and further provides that this time spent on rest periods counts as hours worked for which MLSs will be paid. (*Id.*, ¶ 35.) Plaintiffs contend, however, that notwithstanding Nuance's stated policy, Nuance did not pay MLSs for their rest breaks, and, moreover, that Nuance allegedly reduced MLSs' regular and overtime rates of pay as a result of purportedly failing to properly account for MLSs' mandated rest break time. (*Id.*, ¶¶ 42, 73-74.) In addition to their rest break allegations, Plaintiffs contend that Nuance failed to pay them

---

[3] It is noteworthy that the two opt-ins also do not reside in Massachusetts. (Second Am. Compl., ¶ 78.)

properly pursuant to a July 2017 incentive payment program arising out of a malware incident, which they do not allege occurred in Massachusetts. (*Id.*, ¶ 44.)

All four of Plaintiffs' claims—FLSA, Massachusetts wage claims, breach of contract, and fraud—rely on Plaintiffs' erroneous understanding of and theories concerning Nuance's rest break policies and July 2017 incentive compensation program. As discussed in detail below, two of those four counts fail to state a claim as a matter of law and, therefore, must be dismissed with prejudice.

## ARGUMENT

### I.     Standard of Review for a Motion to Dismiss

Mere "labels and conclusions, or a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (quotations omitted) (quoting *Twombly*, 550 U.S. at 555). To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 665.

In the Tenth Circuit, under the *Twombly* standard, a "complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Coons v. Oklahoma*, 2011 WL 4403727, at *1 (N.D. Okla. Sept. 21, 2011) (Frizzell, J.) (citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (emphasis in original)). Moreover, "[t]he burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Price v. Pub. Serv. Co. of Oklahoma*, 2014 WL 1217962, at *2 (N.D. Okla. Mar. 24, 2014) (Frizzell, J.). Thus, to avoid dismissal for failure to state a claim, the factual allegations must be enough that, if assumed true, the plaintiff plausibly (not just speculatively) has a claim for relief. *Robbins*, 519 F.3d at 1247; *see also Lolar v. Oklahoma*, 2017 WL 1205069, at *1 (N.D. Okla. Mar. 30, 2017) (Frizzell, J.).

The plausibility requirement serves two purposes: (i) to weed out claims that do not have a reasonable prospect of success, and (ii) to inform the defendants of the actual grounds of the claim. *See Robbins*, 519 F.3d at 1248; *see also VanZandt v. Okla. Dept. of Human Servs.*, 276 F. App'x. 843, 847 (10th Cir. 2008) (expressly advising that courts must review any complaint "with these purposes in mind"). In ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest liability. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Importantly, a court need not, should not, and indeed, "*will not* supply additional factual allegations to round out a plaintiff's complaint...." *Lolar*, 2017 WL 1205069, at *2 (citing *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997)) (emphasis added). If the information to plausibly suggest liability is not pleaded by the plaintiff, dismissal pursuant to Rule 12(b)(6) for failure to state a claim is thus required. *See Courtright v. Bd. of Cty. Commr's. of Payne Cty., Oklahoma*, 2008 WL 2446138, at *1 (W.D. Okla. June 13, 2008). Counts II and IV of the SAC fail because they have no reasonable chance of success and/or do not provide Defendants with sufficient notice or information to glean the actual grounds of the claims. This Court must dismiss Counts II and IV of the SAC.

## II.   Plaintiffs' Massachusetts Wage Claims (Count II) Must Be Dismissed Because, As Non-Residents Who Never Worked for Defendants in Massachusetts, Plaintiffs Do Not Have Standing and Are Not Entitled to Claim Protection Under These Laws.

Plaintiffs bring statutory claims under the Massachusetts Payment of Wages Statute and the Massachusetts Overtime Law (collectively, the "Massachusetts Wage Claims") for alleged failure to pay all wages in a timely manner and alleged failure to pay overtime compensation. (Second Am. Compl., ¶¶ 90, 92, 94, 96.)  Plaintiffs' Massachusetts Wage Claims fail as a matter of law because as non-residents who never performed any work in Massachusetts for Nuance, and who never allege that they entered into any agreements or acknowledged any policies relevant to their rest break or incentive compensation allegations in Massachusetts, Plaintiffs fail to allege sufficient contacts with the Commonwealth concerning their employment relationship with Nuance, and therefore, they have no standing or entitlement to claim protection of these

laws.  Indeed, Plaintiffs consistently have pleaded that, "Defendants reside in and/or conduct business in this judicial district [*i.e.*, in *Oklahoma*, and *not* in Massachusetts]" and "a substantial part of the acts and/or omissions giving rise to the claims set forth [in the SAC] occurred in this judicial district [*i.e.*, in *Oklahoma*, and *not* in Massachusetts]." (*Id.*, ¶ 14.)

The Massachusetts Payment of Wages Statute and Overtime Law under which Plaintiffs seek protection do not indicate that they are intended to protect the wages of individuals who do not reside in and have never performed a scintilla of work in Massachusetts.  The Payment of Wages Statute, § 148, provides, in pertinent part, "Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned."  MASS. GEN. LAWS ch. 149, § 148.  The Overtime Law provides, in pertinent part,

> Except as otherwise provided in this section, no employer in the commonwealth [of Massachusetts] shall employ any of his employees in an occupation, as defined in section two, for a work week longer than forty hours, unless such employee receives compensation for his employment in excess of forty hours at a rate not less than one and one half times the regular rate at which he is employed.

MASS. GEN. LAWS ch. 151, § 1A.  Massachusetts courts analyzing whether non-residents may bring claims under §§ 148 and 1A clearly demonstrate that Plaintiffs' Massachusetts Wage Claims must be dismissed for their lack of connection to the Commonwealth.

This Court should not permit plaintiffs to assert Massachusetts Wage Claims "unless such application of this law would be reasonable in the light of the relationship of the [S]tate and of other [S]tates to the person, thing or occurrence involved."  *Dow v. Casale*, 989 N.E.2d 909, 913-14 (Mass. App. Ct. 2013) (quoting Restatement (Second) Conflict of Laws § 9 (1971)).  In order for Plaintiffs at bar to be permitted to bring their Massachusetts Wage Claims, Massachusetts *must* have "the most significant relationship" to *Plaintiffs' employment relationship* with Nuance.  *See id.* at 914.  But it does not.

*Litz v. Saint Consulting Group, Inc.* is illustrative of this principle.  In *Litz*, the U.S. District Court for the District of Massachusetts denied the plaintiff's motion to file a second

amended complaint to add a claim under Massachusetts Overtime Law because i) the plaintiff never worked in Massachusetts, ii) she never resided in Massachusetts, iii) the plaintiff did not allege that any similarly situated employees worked or resided in Massachusetts, and iv) the plaintiff's employment agreement did not contain a Massachusetts choice-of-law provision.  2012 WL 549057, at *1-2 (D. Mass. Feb. 17, 2012).  Ultimately, the court concluded that the plaintiff "was an Illinois employee of a corporation which maintains a headquarters in Massachusetts," and therefore the plaintiff did not have "sufficient contacts to add a Massachusetts law claim to her complaint."  *Id.* at *1.

The connection between Plaintiffs' employment relationship with Nuance and Massachusetts is just as tenuous as in *Litz*.  Here, neither of the two named Plaintiffs (nor the two opt-in Plaintiffs) ever resided or performed any work for Nuance in Massachusetts.  (Second Am. Compl., ¶ 78 (citing their home states and remote work locations as Oklahoma, Idaho, Oregon, and Michigan).)  Plaintiffs also have not alleged that any of their earnings statements were ever sent to or even issued out of Massachusetts.  Quite to the contrary: Plaintiffs have affirmatively incorporated a screenshot of Plaintiff Goode's own Earnings Statement that was issued out of *Atlanta, Georgia*, and sent to Plaintiff Goode's home state of Oklahoma. (*Id.*, page 7.)  Nor have Plaintiffs alleged that they or any of the MLSs in the putative class ever traveled to Massachusetts in the course of their work for Defendants, or even that any of them stepped foot in the Commonwealth during their employment with Defendants.  Nor too do they allege that any MLSs in the putative class have ever performed any work for Nuance in Massachusetts, or that they ever executed any agreements or policies relevant to their claims and allegations in Massachusetts.  Plaintiffs have further not alleged that any of the hospitals or medical facilities for which they, or any of the putative class members, performed transcription services were located in Massachusetts or that the malware incident in 2017 occurred in or stemmed from activity arising out of Massachusetts.  Plaintiffs repeatedly assert that their communications with certain Nuance representatives were primarily facilitated though e-mail hosted on the primary

WEIL:\96416411\14\51991.0081

Nuance domain, (*id.*, ¶¶ 83-85), but they do not allege that the Nuance domain is hosted on a server located in Massachusetts. Plaintiffs' allegations regarding their employment are insufficient to confer standing upon or entitle Plaintiffs to bring the Massachusetts Wage Claims, thus rendering application of the Payment of Wages Statute and the Overtime Law to Plaintiffs' claims unreasonable and inappropriate. *See Nekoroski v. Mathai*, 2012 WL 5309524, at *3 (Mass. Super. Ct. Sept. 28, 2012) ("The Former Employees … were not traveling salesmen; they were IT professionals working out of a New Jersey office and/or their homes in New Jersey and Maryland. *Neither the language of the Wage Act, nor any case decided under it, suggests that the Act should apply to a person employed outside Massachusetts, simply because the employer is headquartered here and the employee occasionally visits the home office on company business.*" (emphasis added)); *see also Hunnicutt v. Zeneca, Inc.*, 2012 WL 4321392, at *5 (N.D. Okla. Sept. 19, 2012) (Kern, J.) (holding that "named plaintiffs generally lack standing to assert class-wide claims under laws of states with which they have no connection").

In a desperate attempt to prevent their Massachusetts Wage Claims from falling into the abyss, Plaintiffs assert several flagrantly false but immaterial allegations in their SAC pertaining to a purported connection to Massachusetts.[4] But even accepting as true the few allegations

---

[4] Plaintiffs allege that they were directed, supervised, and managed by Operations Managers "located at the Nuance Headquarters in Massachusetts." (Second Am. Compl., ¶ 83.) This is flatly untrue. In fact, the Operations Managers *Plaintiffs* identify in their own SAC, Shannon Cave and Rosemarie Smith, are based in Washington and Illinois, respectively. Moreover, Plaintiffs allege that Nuance's Human Resources Department is "located in Massachusetts." (*Id.*, ¶ 84.) However, during the period relevant to Plaintiffs' claims, Nuance Transcription Services, Inc.'s Human Resources Department was based in Atlanta, Georgia, with various other human resources professionals scattered around the country. Tellingly, as evidenced by Defendants' Initial Disclosures served on Plaintiffs on January 26, 2018, virtually none of the witnesses identified as having potentially relevant knowledge or information concerning the claims and defenses in the case is based in Massachusetts. Additionally, Plaintiffs incorrectly assert that Nuance's operations are "dominated … centralized and controlled" in Massachusetts. (Second Am. Compl., ¶ 88.) To the contrary, Defendants maintain offices in *seven* (7) different states spread across the country. Defendants will furnish the Court with a declaration supporting these facts, if the Court so desires. However, the truth or falsity of these

Plaintiffs assert in the SAC, these allegations still fail to establish that it would be reasonable to permit Plaintiffs to proceed with their Massachusetts Wage Claims.[5]  The mere fact that Defendants' corporate headquarters are based in Massachusetts does not permit Plaintiffs to proceed with their Massachusetts statutory claims.  In fact, the Massachusetts Appeals Court recently expressly rejected the proposition "that an employer's presence in Massachusetts is all that is necessary for an employee—wherever situated and whatever the circumstances of employment—to bring a private action against the employer under the [Massachusetts Wage Act, M.G.L. ch. 149, §§ 148, 150]."  *Dow*, 989 N.E.2d at 913.  Therefore, Plaintiffs clearly cannot rely on the mere location of Nuance's headquarters to save their Massachusetts Wage Claims.

Plaintiffs' threadbare and false allegations fail to establish that Massachusetts has the most significant relationship to Defendants and to Plaintiffs' employment relationship with Nuance.  Rather, Plaintiffs have alleged that "Defendants reside in and/or conduct business in this judicial district [N.D. Oklahoma]" and "a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district [N.D. Oklahoma]"—*not* Massachusetts. (*Id.*, ¶ 14.)  Therefore, the Court must find that the named Plaintiffs, as residents of Oklahoma and Idaho who have never performed any work for Nuance in Massachusetts, do not have a claim under the Massachusetts Payment of Wages Statute or the Massachusetts

---

facts is immaterial to deciding this motion. Counts II and IV of the SAC fail even if the facts that Plaintiffs have alleged in their SAC were true.

[5] In an attempt to draw in evidence from a non-party to the Massachusetts Wage Claims and common law claims, Plaintiffs allege that opt-in Long (party only to Plaintiffs' FLSA claim) received an offer of severance that referred to Massachusetts state laws.  (Second Am. Compl., ¶ 87.)  The Court cannot and should not consider this allegation because Long is not a named Plaintiff to the Massachusetts Wage Claims or common law claims.  The only allegations relevant to Plaintiffs' right to assert the Massachusetts Wage Claims are the allegations of named Plaintiffs Goode and Frey.  *Hunnicutt*, 2012 WL 4321392, at *2 ("Prior to class certification, the named plaintiffs' failure to maintain a live case or controversy is fatal to the case as a whole—that unnamed plaintiffs might have a case or controversy is irrelevant." (quoting *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1159 (10th Cir. 2011)).

9

Overtime Law, and dismiss Plaintiffs' Massachusetts statutory claims in their entirety for failure to state a claim.

**III.    Plaintiffs' Fraud Claim (Count IV) Must Be Dismissed Because It Fails to Satisfy Rule 9(b)'s Heightened Pleading Standard and, Alternatively, Is Not Viable Under Oklahoma or Massachusetts Law.**

As an important threshold matter, Plaintiffs' fraud claim (Count IV) is deficient as a matter of law because it falls woefully short of satisfying Rule 9(b)'s heightened pleading standard.  Even if Plaintiffs could meet that pleading standard (which they cannot), Plaintiffs' fraud claim is also subject to dismissal under both Oklahoma and Massachusetts law because it is merely masquerading as an improperly converted breach of contract claim and, moreover, is premised on the same general operative conduct set forth in Plaintiffs' breach of contract claim (Count III).

A.    <u>Plaintiffs Fail to Allege Facts with Sufficient Particularity to State a Fraud Claim.</u>

Plaintiffs confine their fraud allegations to two short, conclusory paragraphs in the SAC that assert the following general contentions purportedly applicable to the two Defendants and to the entire putative class and collective as a whole:

- Defendants falsely represented that Plaintiffs and Putative Class Members would be paid for mandatory rest periods and that they would receive incentive pay. Defendants knew that this assertion was false, or made such assertion recklessly without knowledge of the truth, with the intention that Plaintiffs and Putative Class Members would act upon such assertion by taking the rest periods and working extra during the incentive period. Plaintiffs and Putative Class Members relied to their detriment on the false assertion by taking the rest periods and working during the incentive period. (Second Am. Compl., ¶ 111.)

- Defendants' misrepresentations render them liable to Plaintiffs and Putative Class members. (*Id.*, ¶ 112.)

Plaintiffs' allegations fall far short of Rule 9(b)'s heightened pleading standard because they fail to allege *any* of the requisite detailed circumstances surrounding the alleged fraud. At best, they merely mimic the elements of fraud (yet fail to allege any specific resulting damages) with no specificity or particularity whatsoever. Federal Rule of Civil Procedure 9(b) clearly requires

10

specific and detailed factual allegations to support a fraud claim. *See* FED. R. CIV. P. 9(b) ("[A] party must state with particularity the circumstances constituting fraud or mistake."). The Tenth Circuit has recognized that the purpose of Rule 9(b)'s heightened pleading standard is to "afford defendant fair notice of plaintiff's claims and the factual ground upon which they are based." *See Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (internal citations omitted). To that end, at bare minimum, to satisfy Rule 9(b), a complaint must "set forth the *time, place, and contents* of the false representation, *the identity of the party* making the false statements and the consequences thereof." *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 522 (10th Cir. 2013) (emphasis added) (citation omitted). Specifically, a plaintiff must set forth the "*who, what, when, where, and how* of the alleged fraud." *Whitehead v. Ocwen Fin. Corp.*, 2017 WL 489418, at *3 (N.D. Okla. Feb. 6, 2017) (Frizzell, J.) (emphasis added). Bald, conclusory allegations regarding each element of fraud, as in the SAC, utterly fail to satisfy Rule 9(b). *See Stinson v. Mayard*, 2008 WL 4525399, at *2 (W.D. Okla. Sept. 30, 2008) (holding that while the plaintiff arguably made "bald allegations" on each element of fraud, she failed to satisfy the requirement that she state the "circumstances surrounding the alleged fraud with particularity").

First, Plaintiffs, in scattershot fashion, attribute their allegations of fraud to both Defendant entities collectively. But in this Circuit, "where fraud is alleged against multiple defendants, blanket allegations of fraud couched in language such as 'by the defendants' are insufficient. Instead, the specifics of the alleged fraudulent activity *of each defendant* must be set forth." *Lillard v. Stockton*, 267 F. Supp.2d 1081, 1094 (N.D. Okla. 2003) (Payne, J.) (emphasis added); *see also Koch*, 203 F.3d at 1237 (finding that the allegations failed to identify "any specific Defendant who made [the] alleged fraudulent misrepresentations"). The Tenth Circuit has further acknowledged that the requirement to identify the specific defendant making the alleged fraudulent misrepresentation is a "particularly important requirement" where, as is the case here, multiple defendants are involved. *See Koch*, 203 F.3d at 1237.

WEIL:\96416411\14\51991.0081

In *Whitehead v. Ocwen Financial Corp.*, Your Honor dismissed the plaintiffs' fraud claim where this Court found that the "'who' of the alleged fraud was pled in gross," and that the plaintiffs "consistently lump[ed] the [d]efendants into an undifferentiated group and [made] broad sweeping allegations against all of them, without specifying individuals, their employment status, or a specific relationship to [the various defendant entities]." 2017 WL 489418, at *3.  In short, Your Honor found that the plaintiffs impermissibly "maintain[ed] their broad accusations against defendants collectively." *Id.* at *4; *see also Spencer v. Vatterott Educ. Ctrs.*, 2013 WL 1308750, at *4 (E.D. Okla. Mar. 28, 2013) ("Plaintiffs must specifically set forth the identity of the parties making the allegedly fraudulent statements"); *Lee v. Enter. Fin. Grp.*, 2009 WL 1362605, at *4 (W.D. Okla. May 14, 2009) (dismissing a fraud claim where the "plaintiffs impermissibly lumped all defendants together, rather than setting forth the identity of the party making the fraudulent statements").

Similarly, in the instant case, *even after being put on notice of their deficient pleading* under Rule 9(b) through Defendants' initial motion to dismiss and being given yet <u>another</u> opportunity to amend their pleading, Plaintiffs still fail to allege which of the two Defendant entities made the alleged false representations (and to whom).  Plaintiffs further fail to identify any specific individual(s) or representative(s) employed by or affiliated with each of the two Defendant entities (or their relationship statuses) who allegedly made the representations. Instead, Plaintiffs impermissibly "lump" the two Defendant entities together and repeatedly attribute their contentions to "Defendants" or "Nuance" collectively, which Plaintiffs themselves define to include all defendants originally named in the SAC. (Second Am. Compl., ¶¶ 5, 111-112.) Such general, undifferentiated allegations that "Defendants," collectively, made a false representation (or representations)—effectively pleading the "who" of the fraud "in gross"—are clearly insufficient for Plaintiffs to state a plausible claim for fraud under Rule 9(b). *See Wright v. Serrano*, 2013 WL 183722, at *4 (N.D. Okla. Jan. 17, 2013) (Eagan, J.); *Whitehead*, 2017 WL 489418, at *3.

Moreover, Plaintiffs also fail to allege for each named Plaintiff, individually, the time, place, manner, or content of the alleged false representation, or how each individual Plaintiff was allegedly damaged. *See Spencer*, 2013 WL 1308750, at *4 (explaining that allegations must set forth "*for each individual named Plaintiff* … when it was said, to whom it was stated, where it was said, the specific representation made, and how each individual Plaintiff was damaged as a result" (emphasis in original)). Plaintiffs fling their general contentions of fraud as applicable to "Plaintiffs and Putative Class Members" as a whole, without describing with any particularity the specific alleged fraud upon "each individual named Plaintiff," when the fraud was allegedly articulated, to whom it was allegedly articulated, where it was allegedly articulated, or how "each individual named Plaintiff" was allegedly damaged by the purported fraud. (*See* Second Am. Compl., ¶ 111-112.)

Third, Plaintiffs fail to allege the *specific content* of any statement or statements that they contend was fraudulent. Plaintiffs describe generally the subject matter of the alleged statement or statements, *i.e.*, that they would be paid for mandatory rest periods and that they would receive incentive pay (*id.*, ¶ 111); however, under Tenth Circuit authority, Plaintiffs must allege the precise content of the representations that were purportedly made to them to sufficiently put Defendants on notice of their fraud claim. *See Koch*, 203 F.3d at 1237 (finding that fraud was not pleaded with particularity where, among other failures, the complaint did not allege the content of the alleged misrepresentations, but rather recited general statements that the defendants failed to disclose certain information).

Finally, Plaintiffs fail to identify the *time* (or even general timeframe), the *place* (or even general geographical area), or *manner* in which the unspecified statements were purportedly made to them. *See id.* (finding that as to time, even alleging that misrepresentations were made "during 1982 and continuing to the present time" was insufficient to alert defendants to the "precise time frame" as required under Rule 9(b), and as to place, the petition failed "to mention at all the place at which any misrepresentations were made"); *Lee*, 2009 WL 1362605, at

13

*4 (finding that the plaintiffs failed to sufficiently plead fraud where they failed to identify the "time, place and contents of the alleged fraudulent statements"); *Whitehead*, 2017 WL 489418, at *3 (finding that the "where" of the alleged fraud was "not pled clearly"); *see also VanZandt*, 276 F. App'x. at 847 ("Not surprisingly, the *Twombly* Court is critical of complaints that do not mention specific times, places or people involved."). Defendants know only that Plaintiffs' fraud claim relates generally to one or more alleged representations concerning payment for mandated rest breaks and incentive compensation. But Your Honor has recognized that "our pleading standard does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," and importantly, such an approach would impermissibly ignore the heightened pleading standard of Rule 9(b). *See Whitehead*, 2017 WL 489418, at *3. Because Plaintiffs fail to set forth with particularity <u>any</u> of the circumstances surrounding the alleged fraud as required under Rule 9(b), and thus fail to afford Defendants any notice of the requisite facts upon which this claim is based (again, even after being put on notice of their pleading deficiency and being given the opportunity to cure that deficiency), Plaintiffs' fraud claim must be dismissed.

B.   <u>Plaintiffs' Fraud Claim Also Fails as a Matter of Law Because It Is Not Viable Under Oklahoma or Massachusetts Law.</u>

Even if Plaintiffs met the particularity requirements of Rule 9(b) (which they do not), Plaintiffs' fraud claim must be dismissed because it is merely a breach of contract claim masquerading as a tort claim. Moreover, as vague as it is, Plaintiffs' fraud claim clearly is based on the same challenged conduct as alleged in Plaintiffs' breach of contract claim—namely, compensation relating to and arising out of rest breaks and incentive compensation—and neither Oklahoma law nor Massachusetts law permits plaintiffs to simultaneously pursue these two claims where they are not sufficiently distinct.

Applying Oklahoma choice-of-law rules, *see Lexington Ins. Co. v. Newbern Fabricating, Inc.*, 2015 WL 3911305, at *5 (N.D. Okla. June 25, 2015) (Eagan, J.) ("A federal court exercising supplemental subject matter jurisdiction applies the choice of law rules of the forum state."), Plaintiffs' fraud claim is governed by the law of the state with the most significant relationship to

14

the parties and the underlying occurrence. *Moody v. Ford Motor Co.*, 2006 WL 346433, at *1 (N.D. Okla. Feb. 13, 2006) (Eagan, J.).  This analysis is necessarily hindered due to Plaintiffs' failure to plead their fraud claim with specificity as required by Rule 9(b).  Based on the allegations in the SAC, Defendants know only that Plaintiffs allege that one or more false representations were purportedly made—that they would be paid for mandatory rest periods and that they would receive incentive pay—and that "a substantial part of the acts and/or omissions giving rise to" their claims occurred in this judicial district, *i.e.*, *Oklahoma*.  (Second Am. Compl., ¶¶ 14, 111.)  Therefore, Defendants contend (only for the purposes of determining whether the named Plaintiffs' fraud claim should be dismissed for failure to state a claim) that Oklahoma law applies to this determination.  But regardless of which law the Court applies at this stage, it should still dismiss Plaintiffs' fraud claim because both Oklahoma and Massachusetts require breach of contract and tort claims to be sufficiently distinct to survive.

       1.    *Under Oklahoma Law, Plaintiffs' Fraud Claim is a Breach of Contract Claim in Disguise.*

Under Oklahoma law, "the proper remedy for a breach of contract will be found in a breach of contract claim, not in a claim of fraud based on the breaching party's failure to disclose its potential future breach." *See Myklatun v. Flotek Industries, Inc.*, 734 F.3d 1230, 1236 (10th Cir. 2013). In fact, as Your Honor recently recognized (along with several other courts in this Circuit), "Plaintiff[s] cannot convert an ordinary breach of contract claim into a tort merely by alleging that defendants concealed their intention to breach the contract." *See Horton v. Bank of America, N.A.*, 189 F. Supp. 3d 1286, 1291 (N.D. Okla. May 18, 2016) (Frizzell, J.); *see also McGregor v. Nat'l. Steak Processors, Inc.*, 2012 WL 314059, at *3 (N.D. Okla. Feb. 1, 2012) (Eagan, J.) (the same); *Atkinson, Haskins, Nellis, Brittingham, Gladd & Fiasco, P.C. v. Oceanus Ins. Group*, 2014 WL 3891267, at *5 (N.D. Okla. Aug. 7, 2014) (Dowdell, J.) (the same, and finding that "omissions of [the defendant's] true intentions to not pay" does not amount to fraud under Oklahoma law); *Fox v. Overton*, 534 P.2d 679, 681 (Okla. 1975) (holding that a petition did not state a fraud claim where it alleged merely that a defendant "fraudulently" refused to complete a

sale because the "sum of the remaining allegations" amounted to nothing more than "a cause in contract").

Yet Plaintiffs seek to do precisely that in this case. Plaintiffs already plead a breach of contract claim in which the breach is allegedly "not compensating Plaintiffs and Putative Class Members for [mandated] rest periods or for promised incentives." (Second Am. Compl., ¶¶ 99, 105.) Plaintiffs' fraud claim likewise alleges that "Defendants falsely represented that Plaintiffs and Putative Class Members would be paid for mandatory rest periods and that they would receive incentive pay." (Second Am. Compl., ¶ 111.) But according to this Court, Plaintiffs cannot seek to convert a breach of contract claim into a tort merely by alleging that Defendants purportedly knew their assertions were false, or made them with the intention that Plaintiffs would take rest periods and work more during the incentive period. *See Horton*, 189 F. Supp. 3d at 1291. The court in *Atkinson* likewise dismissed the plaintiff's fraud claim where a defendant had argued that the fraud claim was "nothing more than a well-dressed breach of contract claim masquerading as something more—*a claim Oklahoma precedent strongly rejects*." *Atkinson*, 2014 WL 3891267, at *4 (emphasis added). Allowing Plaintiffs to convert their breach of contract claim into an additional fraud claim (merely masquerading as such) would improperly permit individuals to bring any breach of contract claim simultaneously as a tort action. *See McGregor*, 2012 WL 314059, at *3. Thus, Plaintiffs' fraud claim must be dismissed because it is merely an improperly converted breach of contract claim challenging the same general conduct.

### 2. *Under Oklahoma Law, Plaintiffs' Fraud Claim is Duplicative of Their Breach of Contract Claim.*

Moreover, under Oklahoma law, "a claim for fraud must be distinct from a claim for breach of contract." *McGregor*, 2012 WL 314059, at *3 (citations omitted). In other words, "[w]here a party sues on a theory of breach of contract, it cannot also bring a claim alleging fraud unless the 'tortious act [is] sufficiently independent of the breach of contract.'" *Id.* at *3; *see also Atkinson*, 2014 WL 3891267, at *5 ("[I]t is well-settled that Oklahoma law does not permit the simultaneous pursuit of fraud and breach of contract claims where the two claims are not

16

sufficiently distinct." (citations omitted)). A plaintiff must also incur actual damages as a result of the commission of the alleged fraud rather than damages stemming merely from the alleged breach of contract. *See McGregor*, 2012 WL 314059, at *3 (dismissing the plaintiff's fraud claim where the plaintiff failed to set forth any damages he specifically incurred as a result of the fraud); *see also Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 676 (10th Cir. 2007) (dismissing the plaintiff's fraud claim where the "damages claimed under the breach of contract claim and the fraud claim are identical," and any damages allegedly arising from the plaintiff's fraud claim were recoverable under the breach of contract claim).

In *McGregor*, the court dismissed a fraud claim that was based on the allegation that the defendants had no intention of paying under the contract. 2012 WL 314059, at *3. The court found that the plaintiff's fraud claim and breach of contract claim were "based on precisely the same conduct, namely, defendants' alleged intention to breach the contract." *Id.* The court further found the plaintiff had "not set forth any damages he incurred specifically as a result of the alleged fraud," and thus he could not state a separate cause of action for fraud. *Id.* Likewise, in *Atkinson*, the court dismissed the plaintiff's fraud claim because it was based on the defendant's representations that unpaid invoices would be paid, and its alleged failure to disclose that it had no intention of paying. 2014 WL 3891267, at *5. The court specifically found that the plaintiff's breach of contract and fraud claims were "based upon the same set of operative facts" and its fraud claim was "indistinct from its contract claim." *Id.*

As in *McGregor* and *Atkinson*, Plaintiffs' fraud claim is entirely duplicative of Plaintiffs' breach of contract claim concerning compensation for rest breaks and incentive pay. In Plaintiffs' breach of contract claim, they allege that "Defendants entered into employment agreements with Plaintiffs and Putative Class Members, through which Defendants agreed to *pay Plaintiffs and Putative Class Members for mandated rest periods, and to pay promised incentives* . . . . Defendants breached the agreement by *not compensating Plaintiffs and Putative Class Members for the rest periods or for promised incentives*." (Second Am. Compl., ¶¶ 99, 105 (Breach of Contract)

17

(emphasis added).) Plaintiffs' fraud claim is based on the very same conduct, and alleges that "Defendants falsely represented that *Plaintiffs and Putative Class Members would be paid for mandatory rest periods and that they would receive incentive pay*." (*Id.*, ¶ 111 (Fraud) (emphasis added).) Plaintiffs' own allegations leave no doubt that the fraud and breach of contract claims are virtual twins. Thus, this Court should not allow a separate fraud claim to proceed, and must grant Defendants' motion as to this claim. *See Horton*, 189 F. Supp. 3d at 1291.

Finally, Plaintiffs also have not identified any *damages* that they allegedly suffered that specifically stemmed from any distinct conduct described in their fraud claim, or that otherwise would not be recoverable under the breach of contract claim. In fact, Plaintiffs do not even describe, either generally or with any specificity, <u>any</u> damages that resulted from the alleged fraud. (*See* Second Am. Compl., ¶¶ 110-112.) This is most likely the case because it is obvious that any purported damages *could not possibly be distinct* from those already alleged in their breach of contract claim—*i.e.*, alleged failure to receive payment for rest periods and promised incentives. (Second Am. Compl., ¶¶ 105, 108 ("Defendants breached the agreement by not compensating Plaintiffs and Putative Class Members for the rest periods or for promised incentives. . . . Defendants' breaches caused damages….").) Because Plaintiffs fail to plead a fraud claim sufficiently distinct from their breach of contract claim regarding both rest periods and incentive compensation, and fail to allege any damages arising from the fraud that would not otherwise arise from the alleged breach of contract, Plaintiffs cannot state a separate, plausible claim for fraud. *See Atkinson*, 2014 WL 3891267, at *5; *McGregor*, 2012 WL 314059, at *3.

3. *Plaintiffs' Fraud Claim is Not Viable Under Massachusetts Law.*

Even if the Court were to apply Massachusetts law to Plaintiffs' fraud claim, it should still dismiss the claim because Massachusetts law likewise does not permit a fraud claim that is merely a breach of contract claim in disguise. Under Massachusetts law, "failure to perform a contractual obligation is not a tort in the absence of a duty to act apart from the promise made." *Anderson v. Fox Hill Vill. Homeowners Corp.*, 676 N.E.2d 821, 823 (Mass. 1997) (citations

18

omitted).  This is because "[t]ort obligations are in general obligations that are imposed by law on policy considerations to avoid some kind of loss to others."  *Id.* (quoting W. Prosser & W. Keeton, Torts § 92, at 656 (5th ed. 1984)).  "[I]f the alleged obligation to do or not to do something that was breached could not have existed but for a manifested intent, then contract law should be the only theory upon which liability would be imposed."  *Id.* at 824 (quoting § 92, at 656).  The Supreme Judicial Court of Massachusetts has repeatedly applied this basic maxim, unwilling to permit "[p]laintiffs who are unable to prevail on their contract claims [to] repackage the same claims under tort law."  *Cumis Ins. Soc'y v. BJ's Wholesale Club, Inc.*, 918 N.E.2d 36, 49 (Mass. 2009); *see also Go-Best Assets Ltd. v. Citizens Bank of Massachusetts*, 972 N.E.2d 426, 434-35 (Mass. 2012) ("If not for the contract entered into with the board, Citizens Bank would have no duty to give notice of dishonored checks to anyone other than the account holder.  We are unwilling to transform the bank's *contractual duty* owed to the board into a *duty of care in tort* owed to those whose funds are held in a 'trust account.'" (emphasis added)).  Moreover, Massachusetts law does not permit plaintiffs to recover duplicative damages "[w]here the same acts cause the same injury under more than one theory."  *AECOM Tech Servs., Inc. v. Mallinckrodt LLC*, 117 F. Supp. 3d 98, 113 (D. Mass. 2015) (quoting *Szalla v. Locke*, 657 N.E.2d 1267, 1271 (Mass. 1995)).

Here, as discussed above, the basis of Plaintiffs' fraud claim appears to be Defendants' alleged false representation(s) that "Plaintiffs and Putative Class Members would be paid for mandatory rest periods and that they would receive incentive pay."  (Second Am. Compl., ¶ 111.)  But the alleged misrepresentation in Plaintiffs' fraud claim arises solely from the purported "employment agreements with Plaintiffs and Putative Class Members, *through which Defendants agreed to pay Plaintiffs and Putative Class Members for the mandated rest periods, and to pay promised incentives.*"  (*Id.*, ¶ 99 (emphasis added).)  There is no distinct tort under Massachusetts law based on Defendants' alleged failure to provide payment for such rest breaks or incentive compensation.  *See Anderson*, 676 N.E.2d at 368-69 ("To conclude that tort liability exists solely

19

because the defendant did not perform a contractual duty to remove snow and ice would give rise to a common law duty which we repeatedly have declined to impose on landowners."); *see also AECOM*, 117 F. Supp. 3d at 110 ("Because AECOM's negligent misrepresentation claim is essentially based on Mallinckrodt's failure to adjust the Target Price as promised in the contract, AECOM's relief lies in contract, not in tort." (citations omitted)).  Given the complete overlap between Plaintiffs' breach of contract and fraud claims, again, it is no surprise that Plaintiffs did not identify <u>any</u> damages in their fraud count.  (*See* Second Am. Compl., ¶¶ 110-112.) Indeed, any purported damages Plaintiffs have allegedly suffered from Defendants' alleged "fraud" must be the same as those they have allegedly suffered as a result of Defendants' purported breach of contract.  Neither Oklahoma nor Massachusetts law permits Plaintiffs to recover in fraud what is merely a claim for breach of contract, and therefore Plaintiffs' fraud claim must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court issue an Order dismissing: (i) Plaintiffs' Massachusetts Wage Claims (Count II) and (ii) Plaintiffs' fraud claim (Count IV) in their entirety, and grant such other relief to the Defendants as the Court deems just and proper.

DATED: January 26, 2018                      Respectfully submitted,


                                            s/John D. Russell
                                            John D. Russell, OBA No. 13343
                                            Chris S. Thrutchley, OBA No. 15859
                                            Justin A. Lollman, OBA No. 32051
                                            GableGotwals
                                            1100 ONEOK Plaza
                                            100 West 5th Street
                                            Tulsa, OK 74103-4217
                                            jrussell@gablelaw.com
                                            (918) 595-4800 (telephone)
                                            (918) 595-4990 (fax)

WEIL:\96416411\14\51991.0081

Gary D. Friedman (*admitted pro hac vice*)
Celine J. Chan (*admitted pro hac vice*)
Larsa K. Ramsini (*admitted pro hac vice*)
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
gary.friedman@weil.com
celine.chan@weil.com
larsa.ramsini@weil.com
(212) 310-8000 (telephone)
(212) 310-8807 (fax)

**Counsel for Defendants**

WEIL:\96416411\14\51991.0081

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2018, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of the Electronic Filing to the following ECF registrants:

Donald Eugene Smolen, II – *donaldsmolen@ssrok.com*
Laura L. Hamilton – *laurahamilton@ssrok.com*
Maryann M. Hon – *maryannhon@ssrok.com*
David A. Warta – *davidwarta@ssrok.com*

**Counsel for Plaintiffs**

s/John D. Russell
John D. Russell

22