## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

JENNIFER GOODE and KANDI FREY,    )
individually, and on behalf of all others    )
similarly situated,    )
    )
        Plaintiffs,    )    Case No. 17-CV-00472-GKF-JFJ
    )
v.    )
    )
NUANCE COMMUNICATIONS, INC.    )
and NUANCE TRANSCRIPTION    )
SERVICES, INC.,    )
    )
        Defendants.    )

## OPINION AND ORDER

This matter comes before the court on the Motion to Dismiss, In Part, the Second Amended

Complaint [Doc. No. 42] of defendants Nuance Communications, Inc. and Nuance Transcription

Services, Inc.  For the reasons set forth below, the motion is granted.

## I.    Factual Allegations

The Second Amended Complaint, which is the operative pleading, alleges the following

facts.[1]   Plaintiffs Jennifer Goode and Kandi Frey are current and/or former medical

transcriptionists, also known as medical language specialists (hereinafter "MLSs"), employed by

Nuance Transcription Services, Inc., a wholly owned subsidiary of Nuance Communications, Inc.,

---

[1] Plaintiffs filed a Complaint on August 25, 2017, and an Amended Complaint on September 14, 2017 pursuant to FED. R. CIV. P. 15(a)(1).  [Doc. Nos. 2 and 9].  On December 29, 2017, plaintiffs filed the Second Amended Complaint with the written consent of defendants pursuant to FED. R. CIV. P. 15(a)(2).

a Delaware corporation with its headquarters in Burlington, Massachusetts.  [Doc. No. 29, ¶¶ 5 and 9].  Goode resides in Claremore, Oklahoma, while Frey resides in Post Falls, Idaho.  [*Id.* ¶ 8].

MLSs employed by Nuance, including Goode and Frey, transcribe physician-generated recordings, which are uploaded by the physicians to Nuance's digital platform.  [*Id.* ¶¶ 33 and 79]. Goode, Frey, and other similarly situated MLSs then access the uploaded files from their homes, transcribe the audio files, and enter the completed transcription into Nuance's platform, where it is accessed by the medical providers.  [*Id.* ¶ 79].  Thus, Goode, Frey, and other MLSs are "remote" employees, in that they work from home.  [*Id.* ¶¶ 33 and 78].

Nuance hired Goode, Frey, and other MLSs specifically to work remotely and, prior to hiring, conducted interviews over the telephone.  [*Id.* ¶ 80].  The Nuance employee who interviewed Frey was located in Massachusetts.  [*Id.*]  Once hired, MLSs received written communications regarding their employment relationship with Nuance on Nuance letterhead setting forth its Burlington, Massachusetts address.  [*Id.* ¶ 82].  Nuance "transcription service managers" or "operations managers" located in Massachusetts supervised the transcriptionists, primarily through email, and Nuance's human resources and IT departments are located in Massachusetts.  [*Id.* ¶¶ 83-85].  Goode and Frey's health insurance was out of Massachusetts.  [*Id.* ¶ 81].  Nuance pays its MLSs based on the number of lines of dictations transcribed per week.  [*Id.* ¶ 34].  Nuance also factors accuracy into the wage calculation.  [*Id.*].

Nuance corporate policy requires MLSs to take paid rest periods in an aggregate amount of thirty (30) minutes during each shift of more than six (6) hours, and one fifteen minute rest break per every four hours.  [*Id.* ¶ 35].  Nuance policy states that Nuance "counts time spent on rest periods as hours worked."  [*Id.*].  However, Nuance failed to subtract mandated rest periods from hours worked in calculating lines produced per hour.  [*Id.* ¶ 38].  The practice resulted in the

artificial reduction of MLSs' production rates, and failure to pay monies owed to the MLSs for required rest periods.  [*Id.* ¶ 42].  In weeks that MLSs worked over forty (40) hours, Nuance was obligated to pay one and half times the regular hourly wage for mandated rest periods, but failed to do so.  [*Id.* ¶ 43].

Additionally, Nuance failed to pay promised incentives to its MLSs.  [*Id.* ¶ 44]. Specifically, Nuance implemented a policy pursuant to which, for the week ending July 7, 2017, pay for the first eight hours worked daily would be made "at 1.5 X hours worked X AHR," pay for hours worked daily in excess of eight hours would be made at "2.0 X hours worked X AHR," and an additional $1,000 bonus would be given to employees who had at least forty productive hours within five consecutive days as of July 8.  [*Id.*].  However, Nuance refused to pay the incentive compensation and improperly lowered the overtime rate by excluding the incentive compensation when calculating the overtime rate.  [*Id.* ¶ 45].

Based on these allegations, the Second Amended Complaint asserts four causes of action: (1) failure to provide compensation for mandated rest periods under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; (2) violation of the Massachusetts Payment of Wages Act, MASS. GEN. LAWS ch. 149, § 148 *et seq.* and the Massachusetts Overtime Law, MASS. GEN. LAWS ch. 151, § 1A *et seq.*; (3) breach of contract; and (4) fraud.  Relative to the FLSA claim, the Second Amended Complaint seeks FLSA class certification as to four subclasses:

1.  All of defendants' current and former MLSs who worked at any time during the three (3) years before the filing of the original Complaint to the present who were not paid incentives and who, during weeks that the incentives were earned, worked more than 40 hours in a work week.

2.  All of defendants' current and former MLSs who worked at any time during the three (3) years before the filing of the original Complaint to the present who were paid incentives for work performed during workweeks when the MLS worked more than 40 hours in a workweek, but such incentive payments were not calculated into the MLS's regular hourly rate in order to properly determine the overtime rate.

3.   All of defendants' current and former MLSs who worked at any time during the three (3) years before the filing of the original Complaint to the present who were not paid for required rest periods, during a workweek that the MLS, with the inclusion of paid rest periods, worked more than 40 hours.

4.   All of defendants' current and former MLSs who worked at any time during the three (3) years before the filing of the original Complaint to the present who were not paid for required rest periods, during a workweek that, with the inclusion of unpaid breaks as hours worked, earned less than the FLSA's minimum wage rate.

[*Id.* ¶ 59].   As for the Massachusetts statutory claim, breach of contract, and fraud, the Second Amended Complaint seeks Rule 23 class certification as to three subclasses:

1.   All of defendants' current and former MLSs who worked at any time during the six (6) years before the filing of the original Complaint to the present who were not paid for at least one mandated rest period of less than 20 minutes;

2.   All of defendants' current and former MLSs who worked at any time during the six (6) years before the filing of the original Complaint to the present who were paid an hourly wage that was artificially reduced by defendants, by including rest periods to determine line production per hour.

3.   All of defendants' current and former MLSs who worked at any time during July 2017 who were not paid incentive compensation pursuant to a nation-wide company policy and agreement.

[*Id.* ¶ 58].

Nuance moves to dismiss the Massachusetts statutory wage and overtime claim pursuant to FED. R. CIV. P. 12(b)(6) and the fraud claim pursuant to both FED. R. CIV. P. 9(b) and FED. R. CIV. P. 12(b)(6).

## II.     Motion to Dismiss Standard

### A.     *Fed. R. Civ. P. 12(b)(6)*

In considering a motion to dismiss under FED. R. CIV. P. 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief can be granted.  A complaint must contain

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility requirement "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the conduct necessary to make out the claim. *Id.* at 556. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (quoting *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)).

        B.        *Fed. R. Civ. P. 9(b)*

        Pursuant to FED. R. CIV. P. 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "Rule 9(b)'s purpose is 'to afford [a] defendant fair notice' of a plaintiff's claims and the factual grounds supporting those claims." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1255 (10th Cir. 2016) (quoting *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997)). Thus, at a minimum, the complaint must allege "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (quoting *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000)).

III.    **Analysis**

Nuance moves to dismiss the Massachusetts statutory claim, as well as the common law fraud claim.  The court will separately consider each claim.

A.      *Massachusetts Statutory Wage Claim*

Nuance argues that plaintiffs' Massachusetts statutory claim must be dismissed because, as remote employees with few contacts with Massachusetts, plaintiffs cannot claim protection under the Massachusetts wage and overtime statutes.[2]

The Massachusetts Wage Act "requires 'every person having employees in his service' to pay 'each such employee the wages earned' within a fixed period after the end of a pay period." *Melia v. Zenhire, Inc*., 967 N.E.2d 580, 587 (Mass. 2012) (quoting MASS. GEN. LAW ch. 149, § 148).  The Wage Act creates a private cause of action to an employee claiming to be aggrieved by violations.  MASS. GEN. LAW ch. 149, § 150.

The Massachusetts Overtime Law provides that

> no employer in the commonwealth shall employ any of his employees in an occupation, as defined in section two, for a work week longer than forty hours, unless such employee receives compensation for his employment in excess of forty hours at a rate not less than one and one half times the regular rate at which he is employed.

---

[2] Although Nuance seeks dismissal pursuant to FED. R. CIV. P. 12(b)(6), Nuance includes assertions that plaintiffs "lack standing" to bring the statutory claims.  This argument is somewhat miscast.  Interpreting the Wage Act, the Superior Court of Massachusetts stated "breach of legal duty causing injury is generally all that is needed to have standing."  *Bassett v. Triton Techs., Inc*., 1684-CV-03475-BLS2, 2017 WL 1900222, at *3 (Mass. Super. Ct. Mar. 6, 2017).  Whether a private right of action exists under the statute goes to the merits of the claim, and is not jurisdictional.  *Id.* at *2.  Thus, the motion to dismiss is properly treated as a motion to dismiss for failure to state a claim, rather than a motion to dismiss for lack of standing.  Accordingly, the court will consider the motion to dismiss under FED. R. CIV. P. 12(b)(6), rather than FED. R. CIV. P. 12(b)(1).

MASS. GEN. LAW ch. 151, § 1A.  Like the Wage Act, the Overtime Law provides a private cause of action to those paid less than the required overtime rate of compensation.  MASS. GEN. LAW ch. 151, § 1B.

Neither the Wage Act nor the Overtime Law define the geographic reach of the statutes, but Massachusetts courts interpret both statutes to apply extra-territorially.  *See Dow v. Casale*, 989 N.E.2d 909, 913 (Mass. App. Ct. 2013) (Wage Act); *Gonyou v. Tri-Wire Eng'g Solutions, Inc.*, 717 F. Supp. 2d 152, 155 (D. Mass. 2010) (Overtime Law).  However, the Appeals Court of Massachusetts—the highest court to consider the issue based on this court's review—rejected "absolute position[s]," disagreeing with the contention that "physical place where work is performed trumps all other considerations" and the equally absolutist argument that "an employer's presence in Massachusetts is all that is necessary for an employee—wherever situated and whatever the circumstances of employment—to bring a private action against the employer . . . ."  *Dow*, 989 N.E.2d at 913.  Rather, the court adopted a choice-of-law analysis, stating

> In accordance with choice-of-law doctrine, so long as the requisite criteria are met, the application by a State of its local law is not an impermissible "extraterritorial" assertion of its authority.  The overarching limiting principle, as set forth in the Restatement (Second) Conflict of Laws § 9 (1971), is that "[a] court may not apply the local law of its own [S]tate to determine a particular issue unless such application of this law would be reasonable in the light of the relationship of the [S]tate and of other [S]tates to the person, thing or occurrence involved.

*Id.* at 913-14.  To determine reasonableness, the court considered the following: (1) the location of the employer's headquarters and all physical facilities were located in Massachusetts; (2) customers acquired entered into business with the employer in Massachusetts; (3) the employee's business cards identified the employer's contact information in Massachusetts; (4) the employee's paychecks were issued from Massachusetts; (5) the employee traveled to Massachusetts several times a year; (6) the employee communicated with a manager in Massachusetts via email almost

daily; and (7) the employment agreement provided that the agreement shall be governed by the law of Massachusetts.  *Id.* at 914.  Further, the court noted that, based on the nature of the employee's work as a traveling salesman, "untethered to any particular workplace," the employment relationship "had no substantial relationship to any place but Massachusetts" and therefore a cause of action existed for the employee under the Massachusetts Wage Act.[3]  *Id.* at 914-15.

Similar to *Dow*, plaintiffs allege: (1) Nuance is headquartered in Massachusetts; (2) plaintiffs' health insurance was out of Massachusetts; (3) plaintiffs were supervised by transcription managers and operations managers located in Massachusetts[4]; and (4) communication with supervisors occurred primarily through email, and Nuance's IT Department is located in Massachusetts.  However, unlike in *Dow*, plaintiffs allegedly were paid from Georgia, not Massachusetts.  [Doc No. 29, ¶ 36].  Plaintiffs do not allege that they ever traveled to Massachusetts or that their business contact information is tied to Massachusetts.   Nor can the court reasonably infer from the allegations that any agreement exists between Nuance and plaintiffs requiring application of Massachusetts law.[5]  Finally, and significantly, plaintiffs include

---

[3] Although limited to the Wage Act, persuasive authority indicates a Massachusetts court would apply a similar analysis to claims under the Overtime Law.  *See Litz v. Saint Consulting Grp., Inc.,* No. 11-10693-GAO, 2012 WL 549057, at *1 (D. Mass. Feb. 17, 2012) ("[T]here are some situations where Massachusetts law may apply outside its borders if 'sufficient contacts with the Commonwealth exist.'") (citing *Gonyou*, 717 F. Supp. 2d at 155).

[4] In the motion, Nuance asserts that the operations managers were not, in fact, located in Massachusetts.  However, for purposes of the motion to dismiss, the court must take the factual allegations as true.  *See Twombly,* 550 U.S. at 556.

[5] Plaintiffs urge the court to consider allegations that "Opt-In Party Plaintiff Lorraine Long received an Offer of Severance referring specifically to Massachusetts state laws," including the Wage Act and Overtime Law.  *See* [Doc. No. 29, ¶ 87].  However, Long opted in to the FLSA collective.  *See* [Doc. No. 24].  This court has not yet certified a Rule 23 class with regard to the Massachusetts statutory claim, breach of contract, or fraud.  "Rule 23 actions are fundamentally

no allegations from which the court may reasonably infer that plaintiffs directed business to Massachusetts. Rather, based on the allegations of the Second Amended Complaint, the court can conclude only that healthcare facilities across the world generate audio recordings, which plaintiffs then transcribe from their homes—in Oklahoma and Idaho respectively. *See* [Doc. No. 29, ¶¶ 32-33]. Accordingly, unlike in *Dow*, the court cannot sensibly conclude that plaintiffs' work "occurred" in Massachusetts, despite their physical location. *Cf. Dow*, 989 N.E.2d at 914.

Based on these factors, the court is unable to conclude that application of Massachusetts statutes would be reasonable under the circumstances. Although the *situs* of plaintiffs' work is not dispositive, neither is the mere fact that Nuance is headquartered in Massachusetts sufficient. Where, as here, plaintiffs never worked in Massachusetts, never resided in Massachusetts, and performed transcription work for physicians across the nation—rather than just Massachusetts—plaintiffs do not have sufficient contacts to plausibly state a claim under either the Massachusetts Wage Act or Overtime Law. *See Litz,* 2012 WL 549057, at *1.

Such an approach is consistent with Oklahoma choice-of-law principles.[6] Federal courts in Oklahoma have construed statutory wage claims as tort claims. *See Bliss v. Affiliated*

---

different from collective actions under the FLSA," as, unlike Rule 23 classes, FLSA collectives "do not 'produce a class with an independent legal status, or join additional parties to the action.'" *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1539 (2018) (quoting *Genesis Healthcare Corp. v. Symczyk,* 569 U.S. 66, 74 (2013)). In the context of Rule 23 classes, a nonnamed class member is not a party to the litigation prior to certification of the class. *In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1203 (10th Cir. 2016) (citing *Smith v. Bayer Corp.,* 564 U.S. 299 (2011)). Thus, because Long is not a party to this litigation, allegations related to Long are not properly before this court. Nor is the court persuaded by plaintiffs' citation to *Roco, Inc. v. EOG Res., Inc.*, No. 14-1065-JAR-KMH, 2014 WL 5430251, at *2 (D. Kan. Oct. 24, 2014), because, as previously stated, Nuance does not raise a jurisdictional challenge. *See supra* p. 6 n.2.

[6] Federal courts exercising their supplemental jurisdiction over state law claims in a federal question lawsuit apply the choice of law rules of the forum state. *BancOklahoma Mortg. Corp. v. Capital Title Co., Inc.,* 194 F.3d 1089, 1103 (10th Cir. 1999).

*Pathologists, P.A.*, No. CIV-16-197-KEW, 2017 WL 4343127, at *1 (E.D. Okla. Sept. 29, 2017).

Under Oklahoma law, "[t]he choice of law applicable to a tort claim is the 'most significant

relationship' test" of the RESTATEMENT (SECOND) CONFLICT OF LAWS. *Martin v. Gray*, 385 P.3d

64, 67 (Okla. 2016). Pursuant to the most significant relationship test,

> the rights and liabilities of parties with respect to a particular issue in tort shall be
> determined by the local law of the state which, with respect to that issue, has the
> most significant relationship to the occurrence and the parties. The factors to be
> taken into account and to be evaluated according to their relative importance with
> respect to a particular issue, shall include: (1) the place where the injury occurred,
> (2) the place where the conduct causing the injury occurred, (3) the domicile,
> residence, nationality, place of incorporation and place of business of the parties,
> and (4) the place where the relationship, if any, between the parties occurred.

*Id.* (quoting *Brickner v. Gooden*, 525 P.2d 632, 637 (Okla. 1974)).

Here, the injury occurred in the state in which the plaintiffs received paychecks that did

not include the required wages—plaintiffs' state of residence. *See Lewis v. Energy Solutions, LLC*,

No. CIV-12-1252-C, 2013 WL 3306151 (W.D. Okla. June 28, 2013) (injury occurs where

employee is located when the employment decision is communicated). Thus, the first factor

weighs in favor of either Oklahoma or Idaho law. The second factors weighs in favor of

Massachusetts law as the conduct causing the injury is alleged to have occurred at Nuance's

Massachusetts headquarters. The third factor is neutral as the plaintiffs reside in different states,

Nuance is a Delaware business entity, and Nuance is headquartered in Massachusetts. Thus, the

fourth factor is dispositive—the place where the relationship, if any, between the parties occurred.

Under Oklahoma law, the employment relationship is deemed to have occurred in the state where

the plaintiffs accepted the offer of employment. *See Lewis, LLC*, 2013 WL 3306151, at *2. Based

on the allegations of the Second Amended Complaint, the court can infer only that plaintiffs

accepted employment in their state of residence, as the pleading alleges that plaintiffs were

interviewed via telephone and were hired specifically to telecommute. [Doc. No. 29, ¶ 80]. Thus,

the fourth factor weighs against application of Massachusetts law.  Based on these factors, the court concludes that Massachusetts does not have the requisite significant relationship with plaintiffs' claims to warrant application of Massachusetts statutes.  Nuance's motion to dismiss plaintiffs' Massachusetts statutory claim is granted.[7]

  *B.  Fraud*

  Nuance argues that plaintiffs fail to plead fraud with particularity as required by FED. R. CIV. P. 9(b), and that the fraud claim fails as a matter of law and therefore must be dismissed pursuant FED. R. CIV. P. 12(b)(6).  In response, plaintiffs assert that the Second Amended Complaint adequately alleges constructive fraud based on Nuance's failure to keep accurate records of the actual time spent by MLSs performing compensable activities in violation of a statutory duty.  [Doc. No. 47, pp. 25-27].

  The Second Amended Complaint includes three paragraphs specifically directed to the fraud claim:

  110.  Paragraphs 1-109 are incorporated herein by reference.

  111.  Defendants falsely represented that Plaintiffs and Putative Class Members would be paid for mandatory rest periods and that they would receive incentive pay.  Defendants knew that this assertion was false, or made such assertion recklessly without knowledge of the truth, with the intention that Plaintiffs and Putative Class Members would act upon such assertion by taking the rest periods and working extra during the incentive period. Plaintiffs and Putative Class Members relied to their detriment on the false assertion by taking the rest periods and working during the incentive period.

  112.  Defendants' misrepresentations render them liable to Plaintiffs and Putative Class members.

---

[7] To the extent that plaintiffs are concerned with the frustration of public policy, the court notes that the FLSA claim is unaffected by its ruling, and the "basic overtime provision of the Massachusetts statute is essentially identical to the [Fair Labor Standards Act]."  *Cash v. Cycle Craft Co., Inc.,* 508 F.3d 680, 686 (1st Cir. 2007).

[Doc. No. 29, ¶¶ 110-112].  These three paragraphs make no specific reference to "constructive fraud," nor are there any allegations that Nuance owed a duty of disclosure to plaintiffs such that the court may reasonably infer that plaintiffs intended to assert a constructive fraud claim.  *See Cosper v. Farmers Ins. Co.*, 309 P.3d 147, 149 (Okla. Civ. App. 2013) ("Constructive fraud requires a breach of either a legal or equitable duty.").

Rather, in response to the motion to dismiss, plaintiffs point to allegations included in the Massachusetts statutory claim to establish a duty to disclose, presumably based on paragraph 110's incorporation of all prior paragraphs.  However, courts in this circuit have "strongly criticized the use of 'shotgun pleading,' by which a party pleads several counts or causes of action, each of which incorporates by reference the entirety of its predecessors," as such method "places an inordinate burden on the party responding to that pleading, and on the Court interpreting it, requiring them to parse the narrative repeatedly and attempt to independently extract the particular factual averments that are relevant to each individual claim."  *Greenway Nutrients, Inc. v. Blackburn*, 33 F. Supp. 3d 1224, 1242-43 (D. Colo. 2014) (citations omitted).  The court is particularly mindful of the concerns raised by so-called "shotgun pleadings" in situations such as this where counsel appears to be trying to raise an entirely new legal theory through response briefing.  *See Bus. Loan Ctr., LLC v. Driskill Indus., Inc.*, No. CIV-07-1314-HE, 2008 WL 2704390, at *1 (W.D. Okla. July 3, 2008) ("[A]llegations or arguments in, or documents attached to, a response brief cannot cure a defective pleading.").  However, even if the court were to consider the factual allegations pointed to in plaintiffs' response, plaintiffs fail to allege

constructive fraud with sufficient particularity to satisfy the pleading requirements of either FED. R. CIV. P. 12(b)(6) or FED. R. CIV. P. 9(b).[8]

First, noticeably absent from the Second Amended Complaint are any allegations of the specific statute(s) that allegedly give rise to Nuance's duty of full disclosure and maintenance of accurate records. To the extent plaintiffs rely on MASS. GEN. LAW ch. 149, § 148, plaintiffs cannot establish a plausible claim for the reasons discussed above, and the constructive fraud claim is subject to dismissal pursuant to FED. R. CIV. P. 12(b)(6). Although, in the response, plaintiffs argue that the common law fraud claim is governed by Oklahoma law, [Doc. No. 47, p. 18 n. 14], the Second Amended Complaint includes no citation to any Oklahoma statutes or any facts giving rise to a duty to disclose. [Doc. No. 29]. Absent allegations of the source of the statutory duty to disclose and maintain accurate records, the court questions whether the Second Amended Complaint affords Nuance adequate notice of the alleged constructive fraud. *See Payne Expl. Co.*

---

[8] As previously stated, based on the court's choice-of-law analysis, Massachusetts law is inapplicable to this matter. Plaintiffs urge the court to apply Oklahoma law to the fraud claim. Under Oklahoma law, liability for constructive fraud requires proof of the following: "(1) That the defendant owed plaintiff a duty of full disclosure. This duty could be part of a general fiduciary duty owed by the defendant to the plaintiff. *This duty could also arise, even though it might not exist in the first instance, once a defendant voluntarily chooses to speak to plaintiff about a particular subject matter;* (2) That the defendant misstated a fact or failed to disclose a fact to plaintiff; (3) That the defendant's misstatement or omission was material; (4) That plaintiff relied on defendant's material misstatement or omission; and (5) That plaintiff suffered damages as a result of defendant's material misstatement or omission." *Specialty Beverages, L.L.C. v. Pabst Brewing Co.,* 537 F.3d 1165, 1180-81 (10th Cir. 2008) (emphasis in original). Pursuant to the "most significant relationship" test, it is possible that Oklahoma law would apply to Goode's claim and Idaho law would apply to Frey's claims. However, the same result would likely obtain under Idaho law, as, under Idaho law, "[a] party alleging constructive fraud must plead that there was a duty of trust and confidence between plaintiff and the defendant, the duty was breached, and (1) the defendant made a statement or representation of fact; (2) its falsity; (3) its materiality; [4] the hearer's ignorance of the falsity of the statement; (5) the reliance by the hearer; (6) justifiable reliance; and (7) resultant injury." *Miesen v. Connie Taylor Henderson,* No. 10-CV-00404-CWD, 2017 WL 1458191, at *11 (D. Idaho Apr. 21, 2017) (citing *Doe v. Boy Scouts of Am.*, 356 P.3d 1049, 1055 (Idaho 2015)).

*v. Trident Steel Corp.,* No. CIV-15-818-D, 2016 WL 1530006, at **4-5 (W.D. Okla. Apr. 14, 2016) (requiring plaintiff to sufficiently plead facts creating legal or equitable duty of disclosure).

Second, with regard to the alleged misstatements or omissions, the Second Amended Complaint includes only broad allegations as to the timing of the alleged constructive fraud. Plaintiffs argue that the time-period is the bi-weekly pay period during the applicable statute of limitations period, or the entire duration of Goode and Frey's employment period.  [Doc. No. 47, pp. 25-26].  The Second Amended Complaint alleges that Goode began employment with Nuance in 2011 and that Frey began employment with Nuance in 2007.  [Doc. No. 29, ¶ 33].  Further, the Second Amended Complaint seeks Rule 23 class certification for a six-year period.  [*Id.* ¶ 58].  A time-period ranging from eleven years to a minimum of six years is not sufficiently specific.  *See Hill Equip. Mfg., Inc. v. Marshall,* No. 08-CV-299-TCK, 2010 WL 2640085, at **5-6 (N.D. Okla. June 29, 2010).   Moreover, the Complaint includes only conclusory allegations as to the location and identity of the person making the misstatements and omissions.  Specifically, the Second Amended Complaint alleges, "upon information and belief" that Nuance's "Human Resources Department which managed MLSs' employment is . . . located at the Nuance Headquarters in Massachusetts." [Doc. No. 29, ¶ 84].  However, the Second Amended Complaint is devoid of any allegations regarding the identity or location of the personnel responsible for ensuring compliance with any duty to issue documentation showing numbers of hours worked and the hourly rate. General allegations that various departments are located in Massachusetts—none of which are alleged to be responsible for payroll and/or accounting—do not satisfy the FED. R. CIV. P. 9 pleading requirements. *See Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1112-13 (N.D. Okla. 2003) (constructive fraud claims subject to Rule 9).

Finally, the Second Amended Complaint includes only conclusory allegations of reliance which fail to satisfy either the Rule 12(b)(6) or Rule 9 pleading standard.  *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

To the extent that plaintiffs rely on Nuance's alleged false representations that MLSs would be paid for mandatory rest periods and receive incentive pay, rather than the failure to keep accurate records, the fraud claim fails as a matter of law.  It is well-settled under Oklahoma law that "a claim for fraud must be distinct from a claim for breach of contract."  *McGregor v. Nat'l Steak Processors, Inc.,* No. 11-CV-0570-CVE-TLW, 2012 WL 314059, at *3 (N.D. Okla. Feb. 1, 2012) (quoting *Edwards v. Farmers Ins. Co.,* No. 08-CV-730-730-TCK-PJC, 2009 WL 4506218, at *5 (N.D. Okla. Nov. 24, 2009)); *see also Atkinson, Haskins, Nellis, Brittingham, Gladd & Fiasco, P.C. v. Oceanus Ins. Grp.,* No. 13-CV-762-JED-PJC, 2014 WL 3891267, at *5 (N.D. Okla. Aug. 7, 2014).  "Thus, where 'the facts alleged in a plaintiff's [fraud] claim are precisely the same as those alleged in his contract claim,' a separate [fraud] claim will not be allowed."  *Horton v. Bank of Am., N.A.,* 189 F. Supp. 3d 1286, 1291 (N.D. Okla. 2016) (quoting *McGregor,* 2012 WL 314059, at *3 (alterations in original)).

Plaintiffs direct no argument in their response to actual fraud based on Nuance's alleged false representations that MLSs would be paid for mandatory rest periods and incentive pay—as opposed to constructive fraud based on failure to keep accurate records—and appear to tacitly concede that the claim rests upon the same factual allegations as the breach of contract claim.  *See generally* [Doc. No. 47].  The court agrees.  The breach of contract claim is premised on Nuance's failure to pay plaintiffs for mandated rest periods and promised incentives.  [Doc. No. 29, ¶¶ 99

and 105].  Any fraud claim premised on Nuance's statements regarding pay for rest periods and incentive pay necessarily must be premised on the same conduct and result in the same damages—wages and incentive payments owed.  Thus, for this additional reason, plaintiffs' fraud claim is properly dismissed.  *See Horton*, 189 F. Supp. 3d at 1291 ("Plaintiff[s] cannot convert an ordinary breach of contract claim into a tort merely by alleging that defendants concealed their intention to breach the contract.") (quoting *McGregor,* 2012 WL 314059, at *3); *see also Truckstop.Net, L.L.C. v. Sprint Commc'ns Co., L.P.*, 537 F. Supp. 2d 1126, 1138 (D. Idaho 2008) (fraud claim premised on alleged violation of duties created by contract properly dismissed under Idaho law).

## IV.    Conclusion

WHEREFORE, defendants Nuance Communications, Inc. and Nuance Transportation Services, Inc.'s Motion to Dismiss, In Part, the Second Amended Complaint [Doc. No. 42] is granted.

DATED this 10th day of July, 2018.

GREGORY K. FRIZZELL, CHIEF JUDGE