IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JENNIFER GOODE and KANDI FREY, individually, and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) Case No. 17-CV-00472-GKF-JFJ |
| v. | ) ) ) |
| NUANCE COMMUNICATIONS, INC. and NUANCE TRANSCRIPTION SERVICES, INC., | ) ) ) ) |
| Defendants. | ) ) |

**OPINION AND ORDER**

This matter comes before the court on the Motion for Conditional Collective Action Certification and Court-Authorized Notice [Doc. No. 44] of plaintiffs Jennifer Goode and Kandi Frey, individually and on behalf of all others similarly situated. For the reasons set forth below, the motion is granted in part and denied in part.

**I.      Background**

Plaintiffs and members of the putative collective are current and/or former non-exempt medical transcriptionists, or medical language specialists ("MLS employees"), employed by Nuance Transcription Services, Inc., a wholly owned subsidiary of Nuance Communications, Inc. Plaintiffs filed this lawsuit alleging that defendants violated the Fair Labor Standards Acts, 29 U.S.C. §§ 203 *et seq.*, by failing to pay MLS employees for rest periods, resulting in an improper reduction of overtime pay for MLS employees who worked over forty hours in a workweek and remained clocked in for rest periods, and failing to pay overtime wages to MLS employees who clocked out for rest periods but worked forty hours in a workweek, including rest periods.

Additionally, plaintiffs assert FLSA violations for defendants' failure to timely pay promised incentives to MLS employees and to include the incentives when determining overtime pay.

Based on these allegations, plaintiffs ask the court to certify a collective action under § 216(b) FLSA and to facilitate notice to potential collective members. To that end, plaintiffs propose the following collective definitions:

> Current and former MLS employees of Defendants who worked at any time during the time period from three (3) years before the filing of the original Complaint (*i.e.*, Aug. 25, 2014) to present:
>
> 1. Who were not compensated for rest periods and worked more than 40 hours in a workweek when the rest periods are included;
>
> AND/OR
>
> 2. Who worked more than 40 hours in a workweek, inclusive of rest periods, and earned incentives during such workweeks that were not calculated into the overtime rate and/or were not paid on the regularly scheduled payroll date after the incentives were earned.

[Doc. No. 44, p. 8].[1] In addition to named plaintiffs Jennifer Goode and Kandi Frey, two other individuals have elected to join the collective by filing their Notice of Consent to Join FLSA Action in this court—Lorraine Long and Elaina Rand. *See* [Doc. No. 24].

## II.   Conditional Certification Standard

Section 216(b) of the Fair Labor Standards Act permits collective actions brought for and in behalf of similarly situated employees:

> An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

---

[1] Plaintiffs propose these definitions in the Motion for Conditional Collective Action Certification. [Doc. No. 44, p. 8].

29 U.S.C. § 216(b). The FLSA does not define "similarly situated." However, the Tenth Circuit previously endorsed the two-step *ad hoc* method of determination. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001); *Chapman v. BOK Fin. Corp.,* No. 12-CV-613-GKF-PJC, 2013 WL 12032545, at *2 (N.D. Okla. Apr. 30, 2013).

Pursuant to the *ad hoc* approach, a court first "makes an initial 'notice stage' determination of whether plaintiffs are 'similarly situated[.]'" *Thiessen*, 267 F.3d at 1102. During this first stage, a finding of "similarly situated," "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)). Generally, district courts in this Circuit have limited the scope of their review at the notice stage of certification to the allegations in plaintiffs' complaint and supporting affidavits. *Shockey v. Huhtamaki, Inc.,* 730 F. Supp. 2d 1298, 1303 (D. Kan. 2010); *Smith v. Pizza Hut, Inc.*, No. 09-CV-01632-CMA-BNB, 2012 WL 1414325, at *3 (D. Colo. Apr. 21, 2012). "In reviewing a motion for conditional certification, the court does not weigh the evidence, resolve factual disputes, or rule on the merits of Plaintiff's claims." *Kuri v. Addictive Behavioral Change Health Grp., LLC*, No. 16-CV-2685-JAR-JPO, 2017 WL 5273736, at *2 (D. Kan. Nov. 13, 2017) (internal footnotes omitted).

The court then moves to the second stage. During this second stage, "[a]t the conclusion of discovery (often prompted by a motion to decertify), the court then makes a second determination, utilizing a stricter standard of 'similarly situated.'" *Thiessen*, 267 F.3d at 1102-03. Pursuant to this stricter analysis, "a court reviews several factors, including '(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural

considerations; and (4) whether plaintiffs made the filings required by the [FLSA] before instituting suit." *Id.* at 1103.

### III.  Collective Actions Allegations

This case is at the initial notice stage, and therefore the court need only consider whether substantial allegations exist that the putative collective members were "victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102. The Second Amended Complaint, the operative pleading in this matter, and the declarations of the four "opt-in" plaintiffs—Kandi Frey (Doc. No. 44-1); Lorraine Long (Doc. No. 44-2); Jennifer Goode (Doc. No. 44-3); and Elaina Rande (Doc. No. 44-4)—collectively allege as follows:

Nuance pays MLS employees based on the number of lines of dictation, and the accuracy thereof, that an MLSA employee transcribes in a given week. [Doc. No. 29, ¶ 34]. At times during the collective action period, Nuance required that MLS employees take two fifteen-minute rest periods during the course of any shift over six hours long. [Doc. No. 29, ¶ 35; Doc. No. 44-1, ¶ 3; Doc. No. 44-2, ¶ 4; Doc. No. 44-3, ¶ 4; Doc. No. 44-4, ¶ 4]. The policy required Nuance to pay MLS employees for the rest breaks. [*Id.*]. Nuance also failed to timely pay MLS employees promised incentives. [Doc. No. 29, ¶ 44]. Specifically, Nuance implemented a policy pursuant to which, for the week ending July 7, 2017, pay for the first eight hours worked daily would be made "at 1.5 X hours worked X AHR," pay for hours worked daily in excess of eight hours would be made at "2.0 X hours worked X AHR," and an additional $1,000 bonus would be given to employees who had at least forty productive hours within five consecutive days as of July 8. [Doc. No. 29, ¶ 44; Doc. No. 44-1, ¶¶ 5-7; Doc. No. 44-2, ¶¶ 6-7; Doc. No. 44-3, ¶¶ 5-6].

Frey specifically alleges she has been employed with Nuance since August 14, 2007, as a "remote" MLS employee. [Doc. No. 44-1, ¶ 2]. Nuance did not pay Frey for the rest breaks and,

further, included the rest breaks when calculating her line count per hour, decreasing the amount she was paid. [*Id.* ¶ 3]. During her employment with Nuance, Frey worked in excess of forty hours per week, and therefore the unpaid rest breaks constitute unpaid overtime hours. [*Id.* ¶ 4]. Additionally, during the week of July 1-7, 2017, Frey worked in excess of forty hours, including working more than eight hours on several individual workdays. However, defendants failed to pay the promised incentives and also failed to properly calculate her overtime rate by excluding the incentive payments. [*Id.* ¶ 6]. During the week of July 8-14, 2017, Nuance failed to pay Frey the promised incentive payments. [*Id.* ¶ 7].

Long specifically alleges the following: Long worked for Nuance as a "remote" MLS employee from August 5, 2015 to September 12, 2017. [Doc. No. 44-2, ¶¶ 1-3]. During her employment, defendants did not pay Long for her rest breaks as required by company policy and, further, included the rest breaks when calculating her line count per hour, decreasing the amount she was paid. [*Id.* ¶ 4]. Long worked in excess of forty hours per week on numerous occasions, and therefore the unpaid rest breaks constitute unpaid overtime hours. [*Id.* ¶ 5]. Additionally, Nuance failed to pay Long promised incentive payments for time worked during the week of July 8-14, 2017. [*Id.* ¶ 7].

Goode specifically alleges the following: Goode has been employed by Nuance since December 5, 2011 as a remote MLS employee. [Doc. No. 44-3, ¶¶ 1-3]. During the collective period, Goode was not paid for rest periods as required by Nuance company policy. [*Id.* ¶ 4]. Rather, Nuance included the rest period time when calculating her line court per hour, decreasing the amount she was paid. [*Id.*]. Additionally, Nuance failed to pay Goode the incentive payment of time and a half as promised during the week of July 8-14, 2017. [*Id.* ¶ 6].

Rande specifically alleges the following: Rande worked as a "remote" MLS employee from July 2009 to October 2013 and from July 2014 to June 2016. [Doc. No. 44-4, ¶¶ 1-3]. During her employment, Rande was not paid for rest periods as required by company policy, and, further, the rest periods were included when calculating Rande's line count per hour. [*Id.* ¶ 4]. Rande worked in excess of forty hours per week on numerous occasions and therefore many of the rest periods constitute unpaid overtime hours. [*Id.* ¶ 5].

## IV. Analysis of Conditional Certification

Defendants oppose conditional certification based on three primary arguments: (1) plaintiffs fail to establish that the putative collective members were the victims of a "single decision, policy, or plan" related to rest breaks; (2) plaintiffs are not similarly situated with respect to potential opt-in plaintiffs with respect to their rest break practices or work hours; and (3) conditional certification is improper for the incentive compensation claim because the vast majority of eligible opt-ins have acknowledged full payment under the incentive compensation program. [Doc. No. 49]. The court will separately consider each argument.

*A.   Single Decision, Policy, or Plan Related to Rest Period Claim*

Defendants invite the court to consider evidence that, during the putative collective period, defendants maintained two distinct rest break policies: (1) one providing for *discretionary* rest breaks from August 25, 2014 to September 25, 2015, and (2) a second requiring *mandatory* rest breaks from September 26, 2015 to August 18, 2017 (the date of filing). Defendants argue these two separate rest break policies do not satisfy the "single decision, policy, or plan" requirement and therefore defeat conditional certification.

As an initial matter, as previously stated, generally district courts in this Circuit limit the scope of their review at the conditional certification stage to the allegations in plaintiff's complaint

and supporting affidavits. *Shockey,* 730 F. Supp. 2d at 1303. Generally, consideration of evidentiary material submitted by defendants is appropriate at the motion for summary judgment or motion to decertify stage. *See McCaffrey v. Mortg. Sources, Corp.*, No. 08-2660-KHV, 2009 WL 2778085, at **3-4 (D. Kan. Aug. 27, 2009). Furthermore, defendants' evidentiary submissions are intended to contradict plaintiffs' allegations and supporting affidavits, but, in determining conditional certification, the court cannot weigh the evidence or resolve factual disputes. *Kuri*, 2017 WL 5273736, at *2. The court declines to resolve factual disputes at this stage of the litigation. *See Shockey,* 730 F. Supp. 2d at 1303.

However, even considering the material submitted by defendants, conditional certification is not defeated. Throughout the putative collective period, defendants do not dispute that "[National Transcription Service's] policy has always been to pay its MLSs for rest breaks." [Doc. No. 49-1, ¶ 20]. Plaintiffs' pleadings and supporting affidavits allege that defendants' national corporate policy required Nuance to pay MLS employees for rest breaks. [Doc. No. 29, ¶ 35; Doc. No. 44-1, ¶ 3; Doc. No. 44-2, ¶ 4; Doc. No. 44-3, ¶ 4; Doc. No. 44-4, ¶ 4]. The named and opt-in plaintiffs each aver that they were not paid for rest periods as required by corporate policy. [Doc. No. 44-1, ¶ 3; Doc. No. 44-2, ¶ 4; Doc. No. 44-3, ¶ 4; Doc. No. 44-4, ¶ 4]. Further, Frey, Long, and Rande state that, during their employment with defendants, they each worked more than forty (40) hours in a workweek and, therefore, the unpaid rest periods constitute unpaid overtime hours. [Doc. No. 44-1, ¶ 4; Doc. No. 44-2, ¶ 5; Doc. No. 44-4, ¶ 5]. Accordingly, substantial allegations exist that plaintiffs were subject to a single decision, policy, or plan to violate corporate policy by not paying wages or overtime wages for rest periods. *See Gipson v. Sw. Bell Tel. Co.*, No. 08-CV-2017-EFM-DJW, 2009 WL 1044941, at *3 (D. Kan. Apr. 20, 2009) ("[G]enerally, where putative class members are employed in similar positions, the allegation that defendants engaged in a

pattern or practice of not paying overtime is sufficient to allege that plaintiffs were together the victims of a single decision, policy, or plan.") (quoting *Renfro v. Spartan Comput. Servs., Inc.*, 243 F.R.D. 431, 433-34 (D. Kan. 2007)).

Defendants urge the court to adopt the reasoning of the United States District Court for the Eastern District of Louisiana in *Crowley v. Paint & Body Experts of Slidell, Inc.*, No. 14-172, 2014 WL 2506519 (E.D. La. June 3, 2014), and the Southern District of Florida in *Martinez v. DHL Express (USA) Inc.,* No. 15-22505-CIV-ALTONAGA, 2016 WL 455394 (S.D. Fla. Feb. 5, 2016). However, these decisions are non-precedential and not binding upon this court. Furthermore, the cases are factually distinguishable. In *Crowley*, two different pay schemes existed between the only two plaintiffs—one plaintiff alleged he was paid less than time and a half per hour for hours worked in excess of forty hours per week, whereas the second plaintiff received a lump sum in cash, regardless of how many hours worked in excess of forty hours per week. *Crowley,* 2014 WL 2506519, at *6. In *Martinez,* two different timekeeping policies existed between two separate facilities (LAX and MIA), plaintiffs lacked personal knowledge regarding the practices at the LAX facility, and plaintiffs essentially conceded the differing policies. *Martinez*, 2016 WL 455394, at **4-5.[2] The supporting affidavits belie any similar finding in this case. As previously stated, defendants' policy was always to pay MLS employees for rest breaks and the supporting affidavits of the named and opt-in plaintiffs indicate defendants violated this policy.

---

[2] Moreover, some commentators have suggested that the Eleventh Circuit "utilize[s] a slightly stricter level of proof, requiring that there be some factual support and affidavits showing that the class members are 'similarly situated.'" 7B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE CIVIL § 1807 (3d ed. 2018) (citing *Haynes v. Singer Co., Inc.,* 696 F.2d 884 (11th Cir. 1983)). The Tenth Circuit "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102.

Defendants next argue that no single decision, policy, or plan exists because plaintiffs allege both that MLS employees remained *clocked in* for rest periods—resulting in an artificial reduction of plaintiffs' wages—and that plaintiffs *clocked out* for rest periods and did not receive pay. Defendants argue that the contradictory theories negate the existence of a single policy or practice.

Defendants' argument that plaintiffs present contradictory theories goes more to the merits of plaintiffs' claim, than conditional certification. *See Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307, 1313 (D.N.M. 2017). Consideration of the underlying merits of plaintiffs' claim is inappropriate during this first stage. *McCaffrey*, at *3. Furthermore, defendants' argument invites the court to consider the individual timekeeping practices of plaintiffs, including the potential opt-in plaintiffs' supervisors, geographic location, and scheduling. However, consideration of individual practices is premature. "[C]ourts in the Tenth Circuit have refused to even consider the individualized nature of factual inquiries at the notice stage, holding that such evaluation is not appropriate until the second stage analysis." *Chapman,* 2013 WL 12032545, at *2; *see also Swartz v. D-J Eng'g, Inc.,* No. 12-CV-1029-JAR, 2013 WL 5348585, at *6 (D. Kan. Sept. 24, 2013). To the extent that defendants invite the court to consider non-binding cases from other circuits, such case law is contrary to the standards applied by district courts in this Circuit and, therefore, not persuasive.[3]

---

[3] Defendants response in opposition to conditional certification includes a longer discussion of *Ruiz v. Serco Inc.*, No. 10-CV-394-bbc, 2011 WL 7138732 (W.D. Wis. Aug. 5, 2011). However, it is not clear that the *Ruiz* case applied the *ad hoc* approach endorsed by the Tenth Circuit. Rather, the District Court of Kansas has distinguished the *Ruiz* decision in the FLSA conditional certification context for its reliance on Supreme Court precedent setting forth the standard for certification under FED. R. CIV. P. 23. *See Tommey v. Comput. Scis. Corp.*, No. 11-CV-2214-EFM-GLR, 2013 WL 1304186, at *5 (D. Kan. Mar. 27, 2013). Thus, defendants' reliance on *Ruiz* is not persuasive to this court.

Accordingly, for purposes of conditional certification, plaintiffs have satisfied their burden to put forth substantial allegations that plaintiffs were the victims of a single decision, policy or plan as to rest periods.[4]

### B. "Similarly Situated" as to Rest Period Claim

Defendants next argue that conditional certification is inappropriate because the named plaintiffs are not "similarly situated" to potential opt-in plaintiffs. Defendants point to differences in the degrees of frequency MLS employees take their rest breaks, the duration of the rest breaks, and supervisors' handling of rest breaks. However, as previously stated, such factual inquiries are improper first stage inquiries, and are not appropriate until the decertification or motion for summary judgment stage. *Chapman,* 2013 WL 12032545, at *2; *see also Pivonka v. Bd. of Cnty. Comm'rs of Johnson Cnty.,* No. 04-2598, 2005 WL 1799208-JWL, at *4 (D. Kan. July 27, 2005) ("The Tenth Circuit specifically stated that the court reviews the disparate factual and employment settings of the individual plaintiffs and the various defenses available to defendant which appear to be individual to each plaintiff in the court's second-stage analysis on a motion to decertify at the conclusion of discovery."). Defendants again urge the court to consider non-binding cases from other jurisdictions, which are not persuasive to this court. *See Crowley,* 2014 WL 2506519, at *8 (only two plaintiffs were not subject to same policy and plaintiffs submitted no evidence

---

[4] Defendants also argue that plaintiffs have failed to produce any evidence to support the clocking out theory. However, plaintiffs present substantial allegations of a single policy of failure to pay for rest periods. Thus, defendants' argument regarding the specifics as to the clocking out theory goes to the merits of the claim and is improper for consideration during this first, conditional certification stage. *McCaffrey*, at *3; *Koehler v. Freightquote.com, Inc*., 93 F. Supp. 3d 1257, 1264 (D. Kan. 2015) (as to defendants' argument that plaintiffs lacked evidence that they actually worked over forty hours per week, among others, stating "[w]hile any or all of these arguments may yet prevail, they are not meaningful to the Court at this stage of the analysis in light of the minimal showing plaintiffs must make at the conditional certification stage").

from other opt-in plaintiffs); *Hickson v. U.S. Postal Serv.*, No. 09-CV-83, 2010 WL 3835887, at *9 (E.D. Tex. July 22, 2010) (finding lack of single policy, decision, or plan); *Green v. Plantation of Louisiana, LLC*, No. 10-0364, 2010 WL 5256354 (W.D. La. Nov. 24, 2010) (employees had different job classifications); *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 511 (M.D. La. 2005) (finding lack of single policy, decision, or plan).[5]

Instead, as endorsed by district courts throughout this Circuit, the court will consider plaintiffs' pleadings and supporting affidavits. As previously stated, plaintiffs seek conditional certification of a FLSA collective defined, in part, as follows:

> Current and former MLS employees of Defendants who worked at any time during the time period from three (3) years before the filing of the original Complaint (*i.e.*, Aug. 25, 2014) to present:
>
> 1.     Who were not compensated for rest periods and worked more than 40 hours in a workweek when the rest periods are included;

Named plaintiffs aver that they were employed by defendants as "remote" MLS employees, whose primary responsibility was the transcription of medical documents. *See* [Doc. No. 44-1, ¶¶ 1-2; Doc. No. 44-3, ¶¶ 1-3]. Goode and Frey collectively allege that they were subject to defendants' company-wide policy to provide paid rest periods for MLS employees, but that they were not paid for rest periods. *See* [Doc. No. 44-1, ¶ 3; Doc. No. 44-3, ¶ 4]. Additionally, Frey states that she worked in excess of forty (40) hours in a workweek on numerous occasions, and therefore the unpaid rest periods constitute unpaid overtime hours. *See* [Doc. No. 44-1, ¶ 4]. The supporting

---

[5] Additionally, *Crowley* and *Green* considered plaintiffs' failure to provide evidence of the existence of other potential opt-in plaintiffs in denying condition class certification. *Crowley*, 2014 WL 2506519, at *7; *Green*, 2010 WL 5256354, at *6. However, courts in this Circuit have rejected this requirement, stating "[a]t the conditional certification stage, Plaintiffs are not required to show that other putative class members actually exist." *Stransky v. Healthone of Denver, Inc.*, No. 11-CV-02888-WJM-MJW, 2012 WL 6548108, at *5 (D. Colo. Dec. 14, 2012); *see also Courtright v. Bd. of Cnty. Comm'rs of Payne Cnty.*, No. CIV-08-230-D, 2009 WL 1076778, at *3 (W.D. Okla. Apr. 21, 2009).

affidavits include substantial allegations that named plaintiffs are "similarly situated" to potential opt-in plaintiffs for purposes of conditional certification.

Defendants argue that plaintiffs cannot satisfy the burden to demonstrate similarity of situation because only Frey avers that she was not paid overtime, and Goode never worked more than forty (40) hours in a workweek. However, another district court in Oklahoma previously permitted certification based on the averments of a single plaintiff. *See Courtright,* 2009 WL 1076778, at *3. In this case, based on the substantial allegations of a single corporate decision, policy, or plan to which both Frey and Goode were subject and given the case's procedural posture in the conditional certification (rather than decertification) stage, the court declines to conclude that plaintiffs are not "similarly situated" to potential opt-in plaintiffs at this time. *Thiessen,* 267 F.3d at 1102 (noting first stage determination of "similarly situated" requires "nothing more than substantial allegations" of single policy and that second stage utilizes a "stricter standard of 'similarly situated'"). Furthermore, opt-in plaintiffs Long and Rande also state that they did not receive overtime paid owed for rest periods. *See* [Doc. No. 44-2, ¶ 5; Doc. No. 44-4, ¶ 5].[6] *See Chapman*, 2013 WL 12032545, at *2 (considering declarations of opt-in plaintiffs to determine the existence of a single decision, policy, or plan); *Shockey*, 730 F. Supp. 2d 1298 (same).

C.    *Conditional Certification of Incentive Compensation Claim*

Finally, in opposition to conditional certification, defendants argue that plaintiffs are not similarly situated to members of the putative collective with respect to the incentive compensation program claim for two reasons: (1) Goode did not work more than forty hours in a workweek and

---

[6] Defendants also object on the basis that "approximately 46% of the potential opt-ins . . . were [part-time] or [progressive part-time] during the putative collective period and thus virtually never worked any overtime hours." [Doc. No. 49, p. 28]. However, district courts in this Circuit do not require a showing that other putative collective members actually exist, much less the size of the potential putative collective. *See Courtright*, 2009 WL 1076778, at *3

therefore was not entitled to overtime; and (2) virtually all the potential opt-in plaintiffs have acknowledged payment in full for incentive compensation in response to a letter issued by defendants on October 24, 2017.

With regard to defendants' first argument, notably, defendants do not challenge the existence of substantial allegations of a single decision, policy, or plan regarding incentive compensation in 2017. Further, plaintiffs collectively allege that were subject to an incentive compensation program in 2017. [Doc. No. 29, ¶ 44; Doc. No. 44-1, ¶¶ 5-7; Doc. No. 44-3, ¶¶ 5-6]. Accordingly, substantial allegations exist that putative collective members were together the victims of a single decision, policy, or plan with regard to an incentive compensation plan in 2017. As previously discussed, because substantial allegations exist of a single corporate policy, decision, or plan as to incentive compensation and this case is in the conditional certification stage, the court declines to conclude that plaintiffs are not "similarly situated" to potential opt-in plaintiffs at this time because only Frey was potentially entitled to overtime. *Thiessen,* 267 F.3d at 1102. Furthermore, Long avers that defendants failed to include the incentive payments in calculating her overtime rate [Doc. No. 44-2, ¶ 7], and Goode states that she did not timely receive incentive compensation payments. [Doc. No. 44-3, ¶ 6].

As for defendants' second argument, defendants assert that, on October 24, 2017, defendants issued correspondence to MLS employees advising them to confirm that "all appropriate payments, deductions, and withholdings have been made," and encouraging them to contact human resources with any questions. Defendants argue that, because "the overwhelming majority of MLSs" raised no issues, "virtually all the potential opt-ins acknowledge that they were paid *in full* regarding their incentive compensation awards." [Doc. No. 49, p. 29]. While it may be true that the majority of potential opt-in plaintiffs received adequate compensation, this issue

relates to calculation of damages for opt-in plaintiffs, not certification. "Generally, damages should not be considered in issuing notice." *Reab v. Elec. Arts, Inc*., 214 F.R.D. 623, 628 (D. Colo. 2002); *see also Calvillo,* 267 F. Supp. 3d at 1313 ("[I]ndividualized damages have no bearing at the conditional certification stage.").[7] Thus, allegations that potential opt-in plaintiffs either acknowledged receipt of incentive compensation payments or raised no issues regarding those payments in response to defendants' letter do not defeat conditional certification.

D.   *Summary*

Based on the allegations and supporting affidavits submitted to the court, the court concludes plaintiffs have made "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan," both as to rest periods and incentive compensation.  *Thiessen*, 267 F.3d at 1102.  However, the court must modify the proposed definition for the conditional collective as it relates to the limitations period.  As noted above, plaintiffs propose a conditional collective consisting of "[c]urrent and former MLS employees of Defendants who worked *at any time during the time period from three (3) years before the filing of the original Complaint (i.e., Aug. 25, 2014) to present* . . . ."  [Doc. No. 44, p. 8] (emphasis added).  The filing of a complaint is not relevant to the limitations period for opt-in FLSA plaintiffs.  Rather, an action commences for an opt-in plaintiff on the date he or she files "written consent to become a party plaintiff . . . ."  29 U.S.C. § 256.  "Other district courts in this circuit have reasoned that, because opt-in plaintiffs cannot join a collective action prior to the class being conditionally certified and notice being provided, the three year [FLSA limitations] period should end with the date of conditional certification."  *Sharp v. CGG Land (U.S.) Inc.*, No. 14-CV-0614-

---

[7] To the extent defendants question the validity of plaintiffs' claim based on acknowledgement of receipt of incentive payments, such argument goes to the merits of the claim and is not appropriate for consideration at the conditional certification stage.  *Kuri,* 2017 WL 5273736, at *2.

CVE-TLW, 2015 WL 222486, at *5 (N.D. Okla. Jan. 14, 2015) (citing cases). Accordingly, the court will replace the phrase "at any time during the time period from three (3) years before the filing of the original Complaint (*i.e.*, Aug. 25, 2014) to present" with "at any time during the period beginning July 23, 2015, and ending July 23, 2018" in the definition of the collective.[8]

**V.     Notice**

Plaintiff attach a proposed notice of collective action to the motion for conditional certification. [Doc. No. 44-5]. Defendants object to the proposed notice on five separate bases: (1) the notice is biased in favor of plaintiffs; (2) the notice inappropriately reads as a lawyer's solicitation; (3) the notice fails to advise potential opt-in plaintiffs that they would be obligated to participate in this lawsuit as any other party; (4) the notice is confusing; and (5) the notice contains factual and legal misstatements. However, defendants do not propose alternative language. Although district courts in this jurisdiction have been reluctant to alter plaintiff's proposed notice, "[w]hen the parties dispute the form of the notice, courts have often required the parties to attempt to create a compromise notice, rather than simply ruling on the proposed notice." *Sharp*, 2015 WL 222486, at *6 (collecting cases).

The parties are ordered to meet and confer regarding the content of the proposed notice of collective action. Should the parties prove unable to agree, plaintiffs may submit their proposed notice and brief argument by motion, to which defendants may respond.

Once approved, plaintiffs request that the proposed notice be sent via first-class mail and email, and published on plaintiffs counsel's website. Recently, district courts in this Circuit have

---

[8] FLSA claims have a two-year statute of limitations, except that a cause of action arising from a willful violation has a three-year statute of limitations. 29 U.S.C. § 255(a). "Courts generally use the three year limitations period in first stage conditional certification, despite the requirement of a willful violation, because the question of willfulness speaks to the merits of the case." *Sharp*, 2015 WL 222486, at *5.

confirmed email as a valid form of notice in collective action. *See Calvillo,* 267 F. Supp. 3d at 1315; *Sobolewski v. Boselli & Sons, LLC*, No. 16-CV-01573-RM-STV, 2017 WL 4586108, at *3 (D. Colo. Oct. 16, 2017). Thus, once approved, plaintiffs may provide notice through first-class U.S. mail and email. However, plaintiffs offer no authority to support publication on plaintiffs' counsel's website as a legally valid form of notice, nor has the court identified any. Accordingly, although plaintiffs' counsel may publish the notice on their website, such publication would not constitute valid notice.

Finally, to facilitate notice, plaintiffs seek an order of this court requiring defendants to provide plaintiffs' counsel with the names, addresses, phone numbers and social security numbers of the potential putative class members. However, as other courts have concluded in this context, "the putative class members' privacy interests outweigh plaintiffs' need for their social security numbers . . . at this point." *Koehler*, 93 F. Supp. 3d at 1266. If plaintiffs finds that they cannot locate certain potential class members using the other information requested, they may file a motion detailing the need for additional information at that time. *See id.*

## VI. Conclusion

WHEREFORE, Plaintiffs' Motion for Conditional Collective Certification and Court-Authorized Notice [Doc. No. 44] is granted in part and denied in part. The motion is denied as to plaintiffs' request that defendants produce the social security numbers of potential collective members and publish notice on plaintiffs' counsel's website as a valid form of notice. The proposed definition of the collective of potential plaintiffs is modified as described above to reflect the statute of limitations for opt-in plaintiffs, as provided in 29 U.S.C. §§ 255, 256. The motion is otherwise granted.

FURTHERMORE, plaintiffs' claims are conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b). The class of potential plaintiffs in this collective shall be limited to:

Current and former MLS employees of Defendants who worked at any time during the period beginning July 23, 2015, and ending July 23, 2018:

1. Who were not compensated for rest periods and worked more than 40 hours in a workweek when the rest periods are included;

    AND/OR

2. Who worked more than 40 hours in a workweek, inclusive of rest periods, and earned incentives during such workweeks that were not calculated into the overtime rate and/or were not paid on the regularly scheduled payroll date after the incentives were earned.

FURTHERMORE, defendants shall produce to plaintiffs' counsel, no later than August 2, 2018, a computer-readable database that includes the names of all proposed collective members, along with their addresses and telephone numbers.

FURTHERMORE, the parties shall meet, confer, and, no later than August 6, 2018, submit to the court an agreed-upon notice. The notice will conform to those requirements outlined in this opinion and order. If the parties are unable to agree, plaintiffs will submit, no later than August 6, 2018, a proposed notice and a brief in support of no more than five pages. Defendants will respond no later than August 13, 2018, with a proposed notice and a brief of no more than five pages.

DATED this 23rd day of July, 2018.

_____
GREGORY K. FRIZZELL, CHIEF JUDGE