IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JENNIFER GOODE and KANDI FREY, individually, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NUANCE COMMUNICATIONS, INC., and NUANCE TRANSCRIPTION SERVICES, INC., <br><br> Defendants. | Case No. 17-CV-00472-GKF-JFJ |

**OPINION AND ORDER**

This matter comes before the court on the Application to Amend the Second Amended Complaint [Doc. 148] of plaintiffs Jennifer Goode and Kandi Frey, as well as the Motion to Strike Expert Report of Leah Wietholter [Doc. 151] of defendants Nuance Communications, Inc. and Nuance Transcription Services, Inc. For the reasons discussed below, plaintiffs' motion to amend is denied, and defendants' motion to strike expert report is granted.

**I.     Background and Procedural History**

Plaintiffs and members of the putative collective/class are current and/or former non-exempt medical transcriptionists, or medical language specialists ("MLS employees"), employed by Nuance Transcription Services, Inc., a wholly owned subsidiary of Nuance Communications, Inc. On August 25, 2017, plaintiff Jennifer Goode initiated this litigation by filing the Complaint. [Doc. 2]. On September 14, 2017, prior to defendants filing a responsive motion or pleading, Goode and plaintiff Kandi Frey filed the First Amended Complaint. [Doc. 9]. On December 1, 2017, defendants filed a Partial Motion to Dismiss the First Amended Complaint. [Doc. 26].

Rather than filing a response to that motion, on December 21, 2017, plaintiffs filed a Second Amended Complaint with the written consent of defendants pursuant to FED. R. CIV. P. 15(a)(2).[1]

The Second Amended Complaint asserted four causes of action: (1) failure to provide compensation for mandated rest periods under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; (2) violation of the Massachusetts Payment of Wages Act, MASS. GEN. LAWS ch. 149, § 148 *et seq.* and the Massachusetts Overtime Law, MASS. GEN. LAWS ch. 151, § 1A *et seq.*; (3) breach of contract; and (4) fraud. With respect to the Massachusetts statutory claim, breach of contract, and fraud, the Second Amended Complaint sought Rule 23 class certification as to three subclasses:

1. All of defendants' current and former MLSs who worked at any time during the six (6) years before the filing of the original Complaint to the present who were not paid for *at least one mandated rest period* of less than 20 minutes;

2. All of defendants' current and former MLSs who worked at any time during the six (6) years before the filing of the original Complaint to the present who were paid an hourly wage that was artificially reduced by defendants, *by including rest periods* to determine line production per hour.

3. All of defendants' current and former MLSs who worked at any time during July 2017 who were not paid incentive compensation pursuant to a nation-wide company policy and agreement.

[Doc. 29, ¶ 58 (emphasis added)]. Defendants moved to dismiss the Massachusetts statutory wage and overtime claim and fraud claim [Doc. 42], and the court granted the motion. [Doc. 51]. Thus, only the FLSA and breach of contract claims remain.

---

[1] Both the First Amended Complaint and Second Amended Complaint included four defendants: Nuance Communications, Inc.; Nuance Transcription Services, Inc.; Transcend Services d/b/a Nuance Transcription Services, Inc.; and Transolutions, Inc. [Doc. 9; Doc. 26]. During a January 12, 2018 Scheduling Conference, based on representations from defense counsel and no objection from plaintiffs' counsel, the court terminated Transcend Services and Transolutions, Inc. as parties. [Doc. 40].

On July 24, 2018, the court conditionally certified the FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b), limited to the following:

> Current and former MLS employees of Defendants who worked at any time during the period beginning July 23, 2015, and ending July 23, 2018:
>
> 1. Who were not compensated *for rest periods* and worked more than 40 hours in a workweek when the rest periods are included;
>
>    AND/OR
>
> 2. Who worked more than 40 hours in a workweek, *inclusive of rest periods*, and earned incentives during such workweeks that were not calculated into the overtime rate and/or were not paid on the regularly scheduled payroll date after the incentives were earned.

[Doc. 54 (emphasis added)]. The court approved the FLSA Conditional Certification Notice on August 7, 2018, which provided for an opt-in period of August 23, 2018 to October 22, 2018. [Doc. 57]. Over 800 persons joined as opt-in plaintiffs during the opt-in period.

On August 3, 2018, the court entered the first Class Certification Scheduling Order. It included a September 4, 2018 deadline for motions for joinder of additional parties and/or amendment to the pleadings. [Doc. 55]. On March 1, 2019, the parties jointly moved to extend the deadlines included in the Class Certification Scheduling Order. [Doc. 98]. At that time, the deadline to amend pleadings had lapsed, and the parties did not seek entry of a new deadline. [*Id.*]. The court granted the motion, and entered the proposed Amended Class Certification Scheduling Order submitted jointly by the parties. [Doc. 100]. The Amended Scheduling Order stated "N/A" with respect to the deadline for motions for joinder of additional parties and/or amendment to the pleadings. [*Id.*]. The order included a September 23, 2019 deadline for class certification discovery. [*Id.*].

On September 27, 2019, defendant moved to stay the deadline for the motion to decertify until three (3) weeks after resolution of defendants' then-pending Expedited Motion for Sanctions

or to Compel Discovery Responses of Opt-Ins. [Doc. 112]. The court denied the motion to stay, but extended the remaining scheduling order deadlines by thirty (30) days. [Doc. 113]. The Second Amended Class Certification Scheduling Order stated "N/A" with respect to the deadline for motions for joinder or amendment to the pleadings, as well as the deadline for class certification discovery. [*Id.*]. Pursuant to the Second Amended Class Certification Scheduling Order, the deadline for motions for decertification was November 7, 2019, and the hearing on the motion for decertification was set for January 13, 2020 at 1:30 p.m. [*Id.*].

Defendants timely filed their motion for decertification on November 7, 2019 [Doc. 125], and the court held the hearing on the motion on January 13, 2020. [Doc. 147]. During the hearing, the court questioned plaintiffs' counsel as to whether plaintiffs' proposed damages calculation included nonproductive time that was not a rest break, such as certain administrative time, which was not the subject of this lawsuit. Plaintiffs' counsel admitted that the Second Amended Complaint, the operative pleading in this matter, "is focused on rest breaks." [Doc. 150, p. 17:7-15]. When plaintiffs' counsel continued to press the issue of administrative and other non-productive time apart from rest breaks, the court questioned plaintiffs' counsel: "So to that extent, you're asking me to essentially allow another amendment of the complaint to focus on all nonproductive time as opposed to just rest breaks?," to which plaintiffs' counsel responded in the affirmative. [*Id.* at p. 21:18-23]. During the hearing, defendants' counsel stated their objection "to plaintiffs amending their complaint at this late stage of the litigation." [*Id.* at p. 26:23-25].[2]

Four days later, on January 17, 2020, plaintiffs filed the motion to amend. In the motion, plaintiffs expressly seek leave to amend "to plead more detailed allegations as to the unpaid

---

[2] Plaintiffs' application for leave to amend includes a summation of the hearing that differs from the court's recollection, as well as the official transcript.

administrative tasks and their dilutive effect on Plaintiffs' production pay." [Doc. 148, p. 2]. Additionally, plaintiffs seek leave to amend to "clarify Plaintiffs' proposed Rule 23 class definition and breach of contract claim and to include claims for implied contract and promissory estoppel." [*Id.* at pp. 2-3]. Further, upon review of the proposed Third Amended Complaint, it appears that plaintiffs seek leave to amend to include allegations with respect to a new class of employees: those who "perform[] quality control production tasks (QA and QC) reviewing the transcriptions of MLSs." [Doc. 148-1, ¶ 49]. Defendants oppose plaintiffs' request to amend. [Doc. 155].

Additionally, two days after the hearing on the motion to decertify, plaintiffs' counsel disclosed the expert report of Leah Wietholter, of Workman Forensics, a damages expert "to be used in support of Plaintiffs' Motion for Class Certification under FRCP 23." [Doc. 151-5]. It appears from the materials provided that plaintiffs first retained Wietholter on December 20, 2019, the same day that defendants filed their reply in support of the motion to decertify. [Doc. 146]. In that reply, defendants attacked plaintiffs' time-keeping theory. On January 23, 2020, defendants moved to strike Wietholter's report as untimely. [Doc. 151]. Both the motion to amend and motion to strike are now ripe for the court's review.

**II.     Plaintiffs' Application to Amend the Second Amended Complaint [Doc. 148]**

The court first considers plaintiffs' motion to amend.

*A.     Motion to Amend Standards*

In the Tenth Circuit, "[a]fter a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under FED. R. CIV. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Gorsuch, Ltd. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).

Pursuant to Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Gorsuch, Ltd.*, 771 F.3d at 1240 (quoting *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)). "Another relevant consideration is possible prejudice to the party opposing the modification." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019) (quoting *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)). Good cause may be satisfied "if a plaintiff learns new information through discovery or if the underlying law has changed." *Gorsuch, Ltd.*, 771 F.3d at 1240. However, "[m]ere failure on the part of counsel to proceed promptly with the normal processes of discovery and trial preparation . . . should not be considered good cause." *Tesone*, 942 F.3d at 989 (quoting *Dag Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 105 (D.D.C. 2005)).

Federal Rule of Civil Procedure 15(a) permits a party to amend its pleading once as a matter of course within twenty-one (21) days of service or, if the pleading is one to which a responsive pleading is required, within 21 days of service of the responsive pleading or motion. FED. R. CIV. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Although leave to amend should be freely given "when justice so requires," FED. R. CIV. P. 15(a)(2), "denial of a motion to amend may be appropriate where there has been shown 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Steadfast Ins. Co. v. Agric. Ins. Co.*, No. 05-CV-126-GKF-TLW, 2014 WL 1901175, at *4 (N.D. Okla. May 13, 2014) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "'[T]he grant of

leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court.'" *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (alteration in original) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)).

As previously stated, plaintiffs seek leave to file a Third Amended Complaint to assert the following: (1) factual allegations with respect to the FLSA collective action and Rule 23 class related to allegedly unpaid time for administrative tasks; (2) Rule 23 class claims for promissory estoppel/implied contract; and (3) allegations related to employees who perform quality control production tasks reviewing the transcription of MLSs (referred to as QA and QC employees). The court concludes that plaintiffs have not shown good cause to modify the Second Amended Class Certification Scheduling Order to permit further amendment of the pleadings, nor does FED. R. CIV. P. 15 require amendment at this late date.

B. *New Factual Allegations*

Plaintiffs do not specifically address Rule 16(b)'s good cause requirement, but, in reply, generally argue that they have prosecuted their claims with due diligence. [Doc. 148; Doc. 157]. With respect to factual allegations of unpaid administrative time, plaintiffs primarily argue that they filed their application for leave to amend within a reasonable time of the discovery of the new evidence upon which the amendments are based.[3] Plaintiffs point to a Nuance document titled, "A Day in the Life of an NTS MLS" [Doc. 144-27]; deposition testimony of Melissa Dawson [Doc. 143-5]; and deposition testimony of Nicole Teerlink [Doc. 143-6], as the newly discovered

---

[3] In reply, plaintiffs also suggest that a "turnover" in counsel and the court's short deadline to amend may justify the delay. However, attorney Dan Smolen first entered his appearance for plaintiffs on January 11, 2018—over two years ago and before the court entered its first Class Scheduling Order—and remains counsel of record in this matter. [Doc. 39]. Attorneys from the Caruso Law Firm entered appearances on January 21, 2019, nearly a year before filing the motion to amend presently before the court.

evidence justifying amendment. However, defendants provided "A Day in the Life of an NTS MLS" to plaintiffs on June 9, 2019. [Doc. 155, p. 7 n.1]. Further, plaintiffs deposed Dawson on July 23, 2019, and Teerlink on September 13, 2019. [Doc. 143-5; Doc. 143-6]. Yet, plaintiffs did not seek leave to amend to assert factual allegations related to unpaid administrative time until January of 2020—over six months after receiving the "A Day in the Life" document and four months after Teerlink's deposition. Under the circumstances, the cited evidence does not constitute "newly discovered evidence." Nor do plaintiffs adequately explain why they could not have sought leave to amend during the period between September 13, 2019 and January 17, 2020.

Plaintiffs also argue that defendants will not be prejudiced by amendment to include factual allegations of unpaid administrative time. Plaintiffs contend that "[d]efendants had sufficient notice, by the very nature of this lawsuit, that all unpaid nonproductive time that *reduces* an MLS's rate of pay would be at issue" citing paragraphs 2, 58(b), and 65 of the Second Amended Complaint [Doc. 157, pp. 3-4 (emphasis in original)]. However, paragraph 2 is merely a general allegation with respect to defendants' "compensation scheme," and paragraphs 58(b) and 65 explicitly reference only reduction based on inclusion of *rest breaks*. The cited paragraphs do not provide defendants adequate notice of a potential claim premised on uncompensated *administrative time* or other nonproductive time.

Additionally, although defendants were aware of some deposition questioning in July and September of 2019 directed to the unpaid administrative time or other nonproductive time, questioning a witness regarding certain facts does not equate to asserting a claim premised on those facts.

Finally, plaintiffs argue that the new allegations "do[] not affect the FLSA decertification briefing," [Doc. 157, p. 4], and that, with respect to the Rule 23 claims, plaintiffs are entitled to

- 8 -

seek certification of additional claims not included in the Second Amended Complaint because it is the court's order under FED. R. CIV. P. 23(c)(1)(B) that defines the class, the class claims, issues, or defenses, not the Complaint. [Doc. 148, p. 3]. The court first addresses the FLSA collective claims.

As recognized by the Ninth Circuit, "[c]ollective actions and class actions are creatures of distinct texts . . . that impose distinct requirements." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1101 (9th Cir. 2018). Certification and decertification under the FLSA relate to whether a plaintiff may "proceed collectively *on the existing complaint* because they are not similarly situated." *Id.* at 1102 (emphasis added). Here, plaintiffs sought leave to amend only after briefing on the motion to decertify closed, the parties appeared before the court for a hearing on the motion, and the motion was ripe for the court's determination. Because the court must look to the operative complaint with respect to decertification, permitting plaintiffs leave to amend the FLSA collective allegations at this late date would effectively reopen the motion for decertification briefing and likely result in delays necessitated by rebriefing and potentially another round of expensive discovery. Thus, defendants would be unduly prejudiced by amendment to the factual allegations underlying plaintiffs' FLSA claims. *See Evans v. Asarco Inc.*, No. 04-CV-94-GKF-PJC, 2011 WL 1842775, *2 (N.D. Okla. May 16, 2011).

With respect to the Rule 23 claims, plaintiffs cite to a Seventh Circuit decision in which the court stated: "A complaint must contain three things: a statement of subject-matter jurisdiction, a claim for relief, and a demand for a remedy. FED. R. CIV. P. 8(a). Class definitions are not on that list. Instead the obligation to define the class falls on the judge's shoulders under Fed. R. Civ. P. 23(c)." *Chapman v. First Index, Inc.,* 796 F.3d 783, 785 (7th Cir. 2015). However, in that case, the court went on to recognize that "a district judge has discretion to reject an attempt

to remake a suit more than four years after it began," and that "[i]nsisting that representative plaintiffs put their class definitions on the table '[a]t an early practicable time' is not an abuse of discretion." *Id.* (internal citation omitted). As discussed above, plaintiffs did not seek leave to amend until seven months after receipt of the "A Day in the Life" document, and almost six months after Dawson's deposition, both of which plaintiffs rely on as evidence of allegedly unpaid administrative time. Plaintiffs therefore failed to put forth their proposed class definitions and claims at a reasonably practicable time. Moreover, plaintiffs' proposed amendments would broaden the proposed Rule 23 class and claims. Class certification discovery has closed, and plaintiffs' motion to certify is due in less than two weeks. [Doc. 113]. Under the circumstances, the requested amendment would result in substantial prejudice to defendants. Because plaintiffs failed to pursue the proposed claims related to unpaid administrative time with diligence and defendants would be prejudiced by the requested amendment, plaintiffs fail to demonstrate good cause to modify the scheduling order to permit amendment of the pleadings.

Additionally, plaintiffs failed to satisfy the requirements of FED. R. CIV. P. 15(a). As discussed above, plaintiffs knew of the information related to unpaid administrative (or non-productive) time for several months before seeking leave to amend. *See Minter*, 451 F.3d at 1206 (quoting *Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987)) ("[C]ourts have denied leave to amend where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend.")[4] Further, the requested

---

[4] Plaintiffs direct little argument to the proposed amendments with respect to allegations directed to a new class of employees: those who "perform[] quality control production tasks (QA and QC) reviewing the transcriptions of MLSs." [Doc. 148-1, ¶ 49]. Plaintiffs state only that "Defendants argue that Plaintiffs are raising a dead issue by alleging QA and QC employees of Defendants were similarly not paid by Defendants. Those allegations prove the willfulness of Defendants' FLSA violations and should remain in Plaintiffs proposed Third Amended Complaint." [Doc. 157, p. 6 (internal citation omitted)]. For the same reasons as discussed above with respect to the

amendments raise significant new factual issues and would result in undue prejudice to defendants. *Evans*, 2011 WL 1842775, at *2; *Minter*, 451 F.3d at 1208 (quoting *Patton v. Guyer,* 443 F.2d 79, 86 (10th Cir. 1971)) (prejudice exists when "the amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment'").

Plaintiffs brought this suit based on dilution of medical transcriptionist's overtime wages due to rest breaks.  Now, after over two years and five months, three separate complaints, over a year of class discovery, the completion of briefing and argument as to FLSA certification/decertification, and on the eve of Rule 23 class certification briefing, plaintiffs seek to remake the suit into one for dilution of overtime wages of transcriptionists, *as well as quality control employees*, based on inclusion of *any nonadministrative* time.  Plaintiffs' request to amend is untimely, unduly prejudicial, and therefore properly denied pursuant to FED. R. CIV. P. 16 and FED. R. CIV. P. 15.

    C.    *New Rule 23 Legal Claims*

Plaintiffs also seek leave to amend to add two new Rule 23 common law claims:  breach of implied contract and promissory estoppel.  Again, the requested amendment would broaden the Rule 23 claims at issue in this litigation.  In support of the two new claims, plaintiffs rely on offer letters, Employee Handbooks, policy statements, and communications.  Plaintiffs explicitly state that such documents are "just as referenced in Plaintiffs' Second Amended Complaint," and "[t]hese documents that Plaintiffs allege form their employment agreements in the Second Amended Complaint all contain promises of rest breaks that support alternative claims to an

---

allegations of unpaid administrative time, plaintiffs fail to show good cause for the requested amendment.  Further, plaintiffs did not diligently pursue the claims and, further, the requested amendments would unduly prejudice defendants.  Plaintiffs therefore fail to satisfy the requirements of FED. R. CIV. P. 15 or FED. R. CIV. P. 16, and leave to amend must be denied.

implied contract and promissory estoppel." [Doc. 148, p. 4]. Plaintiffs point to no specific new facts to support the proposed new common law claims. Rather, it appears that plaintiffs premise the proposed new claims on the same documents and facts that were known when plaintiffs filed the Second Amended Complaint. Plaintiffs offer no explanation for failing to include those claims in the Second Amended Complaint or for their delay in seeking leave to amend to assert these alternative claims. "Courts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint 'a moving target,' to 'salvage a lost case by untimely suggestion of new theories of recovery,' to present 'theories seriatim' in an effort to avoid dismissal, or to 'knowingly delay[] raising [an] issue until the 'eve of trial.'" *Minter,* 451 F.3d at 1206 (internal citations omitted).

As this court has previously recognized, "[t]he chief virtue of deadlines is that they provide a clear limit on the time to be spent on each aspect of litigation, and adherence to them is necessary to keep litigation progressing forward." *Evans,* 2011 WL 1842775, at *1. Under the circumstances, the court declines to adjust the deadline for amendment of pleadings, which the parties let lapse, to assert two new claims, the basis of which was known at the time of the filing of the Second Amended Complaint. For the foregoing reasons, plaintiffs' Application to Amend the Second Amended Complaint is denied.

### III. Motion to Strike Expert Report of Leah Wietholter [Doc. 151]

Defendants move to strike the expert report of Leah Wietholter of Workman Forensics, plaintiffs' damages expert, as untimely. In response, plaintiffs argue that the expert report is not untimely because the Second Amended Class Certification Scheduling Order did not include a specific deadline for expert disclosures and therefore "Defendants can point to no order of the Court Plaintiffs' disclosure violates, no rule of civil procedure the disclosure violates, and offered

nothing but bald conclusory allegations Defendants face prejudice." [Doc. 154, p. 1]. The court therefore looks to the applicable Rules.

Under Federal Rule of Civil Procedure 37, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). Plaintiffs contend their disclosure was timely pursuant to Federal Rule of Civil Procedure 26(a), which requires disclosure of expert testimony "at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made . . . at least 90 days before the date set for trial or for the case to be ready for trial." FED. R. CIV. P. 26(a)(2)(D). However, Rule 26(e) requires a party to supplement or correct, not only Rule 26(a) disclosures, but also responses to an interrogatory, requests for production, or requests for admission. FED. R. CIV. P. 26(e)(1). The party must supplement "in a timely manner." FED. R. CIV. P. 26(e)(1)(A).

Here, plaintiffs produced discovery in March of 2019 stating that they had not retained an expert at that time. [Doc. 151-2, pp. 29-30; Doc. 151-3, pp. 29-30]. Class certification discovery in this matter closed on September 23, 2019. And yet, plaintiffs did not disclose Wietholter as a potential witness until January 15, 2020.[5] Further, plaintiffs do not contend that they ever supplemented their discovery responses to affirmatively state that they retained an expert.

---

[5] The court notes that, during the January 13, 2020 hearing on the motion to decertify, defendants stated that plaintiffs had not disclosed an expert with respect to analysis of WebClock records and plaintiffs' server variance theory, and that the time for expert disclosures had passed. [Doc. 150, pp. 34:4 to 35:11]. Although plaintiffs had apparently retained Wietholter on December 20, 2019, weeks before the hearing, plaintiffs' counsel failed to disclose Wietholter's identity or opinions even at that late date. [*Id.* at p. 44:17-23].

Moreover, class certification discovery as a whole closed on September 23, 2019. Plaintiffs' January 15, 2020 disclosure of Wietholter states that her report "is to be used in support of Plaintiffs' Motion for Class Certification under FRCP 23."[6] [Doc. 151-5]. Wietholter's report constitutes discovery directed to class certification and is therefore untimely.[7]

As previously stated, failure to disclose pursuant to Federal Rule of Civil Procedure 37 subjects the deficient party to sanctions unless the failure "was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). "[T]he determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Neiberger v. Fed Ex Ground Package Sys., Inc.*, 566 F.3d 1184, 1191-92 (10th Cir. 2009) (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 993 (10th Cir. 1999)). To make the determination, the court should be guided by the following factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc.*, 170 F.3d at 993.

Here, the court concludes that plaintiffs' failure to supplement its discovery responses, or otherwise disclose Wietholter's opinions, unduly prejudices defendants with respect to class certification issues. Plaintiffs' motion for class certification is due in a little over a week, and defendants' response in approximately one month. The current scheduling order deadlines do not permit defendants sufficient time for preparation of a rebuttal expert report—*i.e.,* to cure the

---

[6] Although plaintiffs' disclosure purports to limit Wietholter's opinions to the Rule 23 claim, it appears that plaintiffs will also attempt to rely on the opinions with respect to the FLSA claim. *See* [Doc. 150, p. 44:17-23].

[7] The court notes that the parties submitted the Amended Class Scheduling Order as an agreed proposed order. [Doc. 98]. At no point did either party alert the court to the need for a deadline specific to experts directed to class certification.

prejudice. Further, class certification discovery has been closed for several months. Reopening discovery and/or adjusting the briefing schedule would result only in more delays in this litigation, which has been pending for nearly two-and-a-half years. The court will move this case forward. Finally, permitting plaintiffs to rely on Wietholter's opinions would significantly disrupt this case, in part because Wietholter premised her damage calculations on plaintiffs' claims that they "were not paid for rest breaks *or daily administrative time*." [Doc. 151-4, p. 2 (emphasis added)]. For the reasons discussed above, daily administrative time is not at issue in this case. Thus, for the foregoing reasons, plaintiffs' failure to supplement and disclose Wietholter's opinions is not substantially justified or harmless. Defendants' motion to strike Wietholter's expert report must be granted.

## IV.   Conclusion

WHEREFORE, plaintiffs Jennifer Goode and Kandi Frey's Application to Amend the Second Amended Complaint [Doc. 148] is denied, and defendants Nuance Communications, Inc. and Nuance Transcription Services, Inc.'s Motion to Strike Expert Report of Leah Wietholter [Doc. 151] is granted.

IT IS SO ORDERED this 5th day of February, 2020.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE